Alan Romero (SBN 249000)
Robert S. Myong (SBN 262097)
Elizabeth Villarreal (SBN 327937)
Email: private@romerolaw.com
ROMERO LAW, APC
251 S. Lake Avenue, Suite 930
Pasadena, CA 91101-4873
Telephone: (626) 396-9900
Facsimile: (626) 396-9990

Attorneys for Plaintiff
STEVEN BAIRD

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BAIRD, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LEIDOS, INC., a Delaware; and DOES 1-99, inclusive;<br><br>Defendants. | Case No.:  3:22-cv-00060-LL-BGS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*Assigned to: Judge Linda Lopez*<br>*Referred to: Magistrate Judge Bernard G. Skomal*<br><br>Hearing Date: April 27, 2023<br>State Complaint filed:  November 30, 2021<br>Trial Date: None Set |

**1**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 6

II. STATEMENT OF FACTS ................................................................................. 6

    A. Baird begins work at Leidos and receives good evaluations throughout his employment ..................................................................... 6

    B. No policy prohibits political discussion which comes naturally at a border security company during the tense 2020 elections ......................... 7

    C. Baird gets the only write up he ever got at Leidos and it is satisfactorily resolved ...................................................................... 9

    D. Baird informs Leidos he is scheduled for heart surgery and takes protected medical leave after breaking his right arm ................................. 9

    E. Cooper confronts and assaults Baird over a reference to Home Alone ..... 10

    F. Baird is Investigated and Terminated for Cooper's Assault of Baird ........ 12

III. APPLICABLE LAW ........................................................................................ 14

IV. ARGUMENT ................................................................................................... 16

    1. Summary judgment cannot be granted where there are several genuine issues of material facts ...................................................... 17

    2. Baird engaged in activity protected under FEHA and activity protected under CFRA .......................................................................... 17

    3. Baird can establish a causal connection between his protected activity and his unlawful discharge ................................................. 18

    4. Baird has provided evidence that the stated reasons for the termination were false which intentional retaliation can be inferred from ...................................................................................... 19

    5. Leidos justification for the decision is based on subjective belief that Baird was somehow responsible for the assault and an annoying bully at work and accordingly can give an inference of intentional retaliation .............................................................. 20

**2**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

6.    Leidos shoddy investigation supports an inference of intentional retaliation ........................................................ 21

7.    Temporal proximity also is indicative of pretext............................ 22

8.    Other facts show inconsistencies and weakness in the termination decision.................................................................. 22

9.    Baird presents clear and convincing evidence of fraudulent and oppressive conduct.................................................. 23

V. CONCLUSION ....................................................................................... 24

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

## TABLE OF AUTHORITIES

**CALIFORNIA CASES**

*Commodore Home Systems v. Superior Court*, 32 Cal.3d 211, 214-215, 220-221 (1982) ........................................................................................................................ 23

*Cornell v. Berkeley Tennis Club*, 18 Cal.App.5th 908, 942-943 (2017) ........................ 17

*Evans v. Sears Logistics Servs., Inc.*, 2011 WL 6130885 * 6 (N.D. Cal. 2015) ............ 16

*George F. Hillenbrand, Inc. v. Insurance Co. of North America*, 104 Cal.App.4th 784, 816 (2002) ............................................................................................................. 23

*Glynn v. Superior Court*, 42 Cal.App.5th 47, 56 (2019) ................................................ 18

*Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 810 (1981) ................................... 23

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 363 (2000) ................................................... 22

*Hersant v. Dep't of Social Servcies*, 57 Cal.App.4th 997, 1004-1005 (1997) ............... 19

*Mathieu v. Norrell Corp.*, 115 Cal.App.4th 1174, 1188 (2004) ..................................... 22

*Monge v. Superior Court*, 179 Cal.App.3d 502, 508 ...................................................... 23

*Nazir v. United Airlines,* 178 Cal.App.4th 243, 277 (2009) ........................................... 21

*Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95 (2004) ........................................... 21

*Rogers v. County of Los Angeles*, 198 Cal.App.4th 480, 490-491 (2011) ...................... 18

*Ross v. County of Riverside*, 36 Cal.App.5th 580, 593 (2019) ....................................... 17

*Sada v. Robert F. Kennedy Medical Center*, 56 Cal.App.4th 138, 148-149 (1997) ...... 19

*Schroeder v. Auto Driveway Co.,* 11 Cal.3d 908, 922 (1974) ........................................ 23

*Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.App.4th 1216, 1235 (2006) ................................................................................................................... 22

*White v. Ultramar, Inc.*, 21 Cal.4th 563, 577 (1999) ..................................................... 23

**CALIFORNIA STATUTES**

2 Cal Code Regs. § 7297.7 ................................................................................................ 18

**4**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

California Civil Code § 3294(a) ........................................................................... 23

Gov't Code § 12940(m)(2) ................................................................................. 17

Gov't Code § 12945.2(l) ..................................................................................... 18

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ............................... 15

*Becker v. Tenenbaum-Hill Ass'n, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990) .................... 15

*Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982).................. 18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .......................................... 15

*Chuang v. Univ. of California Davis, Board of Trustees*, 225 F.3d 1115, 1129 ............ 15

*First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).............. 16

*Lujan v. Walters*, 818 F.2d 1051, 1057 (10th Cir. 1987).................................... 21

*Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) ........................... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)..... 16

*Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)......................................................................................... 18

*Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.2000).................................... 18

*Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)..................... 15

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993) ............................... 20

*Weber v. Towner County*, 565 F.2d 1001, 1005 (8th Cir. 1977) ............................. 14

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) ............................. 20

**FEDERAL STATUTES**

Fed. Rules Civ. Proc. Rule 56(a) ....................................................................... 14

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Steven Baird was a solid, reliable performer. Baird was not fired for performance. Defendant Leidos, Inc. did not have a policy prohibiting discussing politics. Baird and several of his co-workers talked politics. Baird's talking politics wasn't an issue for Leidos until Baird informed his superiors of his heart condition, injured his arm such that he could not lift for a period of time, and took medical leave.

On March 10, 2021, Garner, a co-worker took offense to a benign joke and physically assaulted Baird. Garner should have been fired. Leidos saw an opportunity to separate a problem employee (the problem being Baird's medical leave and restrictions) and charged Baird, not Garner, with workplace assault. Never mind Garner was the one who assaulted Baird, never mind Baird never touched Garner, never mind no one observed Baird assault Garner. Leidos investigator worked around reality to justify his termination.

For good measure, Leidos explored, solicited and dug up old problems, allegedly arising from politics to paint a hard-working, reliable Baird in the worst possible light in a sad effort to justify his unlawful termination.

The bottom line is there are genuine issues of material facts. Baird was the victim, not the perpetrator. Baird did not make the outrageous comments that Leidos' motion leads off with. And while Baird did discuss politics with his left-leaning co-workers, Baird did not break any workplace rules in doing so. Because there are genuine issues of material facts, Leidos motion for summary judgment / adjudication should be denied in its entirety.

### II.   STATEMENT OF FACTS

**A.   Baird begins work at Leidos and receives good evaluations throughout his employment**

**6**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

Baird is a Canadian who grew up in California, he is purpose driven and cares about civic duty, he was a firefighter for many years. Baird Decl. ¶ 2. On November 26, 2018, Baird began working at Leidos as a machinist, he worked hard, was reliable and Leidos never had an issue with his work product or capabilities. Baird Decl. ¶ 3.

Sim was Baird's supervisor. UMF 3.[1] In late 2019, Baird was verbally counseled by Sim over comments he made in the lunch room that were perceived to be racist. Baird Decl. ¶ 4. Baird had expressed support for secure borders and legal immigration. Baird Decl. ¶ 4. Baird meant no offense, but the comment offended Efren, a co-worker, who as often happens, equated advocacy for secure borders and legal immigration as racism against people of color. Baird Decl. ¶ 5.

Following the verbal counseling, Baird did not discuss the issue with Efren again; the two of them continued to work and got along. Baird Decl. ¶ 6. Baird never heard anything about the comment again until the investigation some 16 months later. Baird Decl. ¶ 6.

The immigration comment did not come up in his performance review for the year 2019 that occurred soon after. Baird Decl. ¶ 7, Ex. A. Baird received good performance evaluations throughout during his employment at Baird. Baird Decl. ¶ 8, Ex. A & Ex. B. Nothing in the performance evaluations refers to or hints at intimidation, bullying, hostility or discussing politics. Baird Decl. ¶ 7, Ex. A & Ex B. In the 2020 review, given to him in early 2021, Baird received a "valued performance" for the Behaviors category.  Baird Decl. ¶ 7, Ex. B.

Sim was responsible for Baird's performance reviews. Sim Depo., at 18:3-5. Sim gave Baird an overall "valued performance" for his performance in 2020. Sim Depo., at 20:1-12. Sim also gave Baird a "strong performance rating in the results category because Sim could count on Baird to complete tasks. Sim Depo., at 20:18-21:6.

**B.    No policy prohibits political discussion which comes naturally at a**

---

[1] Leidos' facts that not in genuine dispute are referred to as Undisputed Material Facts "UMF".

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

**border security company during the tense 2020 elections**

Leidos builds equipment for the government, including x-rays for border security to detect human smuggling, drug smuggling, dirty bombs, illicit contraband, and airport body scanners. Baird Decl. ¶ 8; UMF 2. Border security is at the heart of what Leidos existence. Baird Decl. ¶ 8.

There was no Leidos rule or policy prohibiting political discussion in the workplace. Baird Decl. ¶ 9; Wilson Depo., at 14:20-22; Valera Depo., at 18:25-19:2.

Baird talked politics, mostly to Arroyoavila, who was on the opposite political spectrum. Baird Decl. ¶ 10. The conversations were civil, never heated, and Baird enjoyed the conversations. Baird Decl. ¶ 10. There was good natured ribbing both ways, but Arroyoavila never told Baird he was offended by him. Baird Decl. ¶ 10; Valera Depo., at 15:22-16:2.

Valera observed the two having lively conversations but it never looked like it would turn violent. Valera Depo., at 16:3-8. Arroyoavila's complaint about Baird was only in reference to Baird's political leaning; Arroyoavila never told Valera Baird was discriminatory. Valera Depo., at 16:9-23, 17:2-4.

Baird did not have any political posters or items at his work station, Baird did not have political bumper stickers on his car, Baird did not wear any clothing that would indicate his political beliefs. Valera Depo., at 24:25-25:7.

James Wilson is Leidos' warehouse manager for the past seven years. Wilson Depo. at 10:3-10. Arroyoavila, Valera, and Michael Angelo gossiped to Wilson about Baird's political beliefs. Wilson Depo. at 12:18-13:2, 13:9-24, 17:16-19. Arroyoavila shared his own political beliefs as well. Wilson Depo., 14:3-4. Baird for his part did not talk about politics with Wilson. Wilson Depo., at 17:5-7. Nor had anyone complained to Wilson about Baird. Wilson Depo., at 17:1-4, 20-24.

Baird did not antagonize co-workers or make racist and inflammatory comments. Baird Decl. ¶ 11. Baird never said he would put a bullet in President Biden's head. Baird Decl. ¶ 12. Baird never said he wished there was another outcome in the Capital

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

riots. Baird Decl. ¶ 12. Baird was disappointed in the rioters and told Arroyoavila he did not support the rioters. Baird Decl. ¶ 12.

Baird did tell Arroyoavila he wished President Trump had won the 2020 election. Baird Decl. ¶ 13. Both Baird and Arroyoavila believed the country was going down the wrong path, but for different reasons. Baird Decl. ¶ 13. It was election time in a divided country, people were talking about these issues, including at work. Baird Decl. ¶ 13; Valera Depo., at 26:24-27:11. The outcome of the election was important to Leidos and its employees because different administrations would have different border security goals. Baird Decl. ¶ 13.

Valera began working at Leidos in 2017. Valera Depo., at 8:9-18. Valera and Baird interacted daily for about 30 minutes to an hour, the interactions were friendly. Valera Depo., at 10:24-11:6. Valera never had a problem with Baird. Valera Depo., at 11:7-15.

## C.    Baird gets the only write up he ever got at Leidos and it is satisfactorily resolved

Baird was written up only once during his employment, around September 2020. Baird Decl. ¶ 14. Baird had left an automated machine running to do other work and was counseled by Sim because it violated policy. Baird Decl. ¶ 14. Baird told Sim the rule should be updated for a number of reasons. Baird Decl. ¶ 15. Baird, Sim and Jeff King, the safety officer, came up with an outcome, a telephone tree, that worked for everyone. Baird Decl. ¶ 16; LF 19; Sim Depo., at 35:1-9. Baird never again left an automated machine unattended. Baird Decl. ¶ 16.

## D.    Baird informs Leidos he is scheduled for heart surgery and takes protected medical leave after breaking his right arm

Around December 2020, Baird learned he needed to have heart surgery, which was scheduled for early February 2021. Baird Decl. ¶ 17. Baird informed Sim and

**9**

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA

initially scheduled medical leave for the day of the surgery and following week for recovery. Baird Decl. ¶ 18.

On January 18, 2021, Baird suffered a broken arm while trying to help an injured driver. Baird Decl. ¶ 19; Wilson Depo., at 18:14-25. Baird could barely move his right arm and needed time off to heal, so he contacted Leidos had his medical leave begin the next day, January 19, 2021 and going to February 22, 2021. Baird Decl. ¶ 20. Baird underwent heart surgery as planned in early February 2021. Baird Decl. ¶ 20.

In late February 2021, Baird returned to work. Baird Decl. ¶ 21; LF 24. Baird's right arm was in a sling and he had restrictions including "no reaching above the right shoulder" and "no lifting, carrying, pushing, or pulling more than zero pounds." Baird Decl. ¶ 21; Ex. C.

Sim was aware Baird had requested medical leave because Baird provided him with doctor's notes regarding leave and also restrictions. Sim Depo., at 14:7-13, 14:23-15:3. Baird was the first employee to present an accommodation request to Sim. Sim Depo., at 39:23-25. Sim had worked at Leidos since 2004. Sim Depo., 10:11-13.

Baird's regular job duties require lifting items weighing between 20 and 50 pounds. Baird Decl. ¶ 22; Sim Depo., at 15:10-13, 16:14-17. Leidos did provide employees to help Baird lift items, there were times Baird had to wait and wait, getting help did slow work down. Baird Decl. ¶ 22; Wilson Depo., at 19:19-23.

**E.    Cooper confronts and assaults Baird over a reference to Home Alone**

Baird greets co-workers in jest, such as "Hey, Denver Bronco" if the co-worker is always wearing a Denver Bronco hat. Baird Decl. ¶ 23. On March 10, 2021, Cooper Garner was wearing a beanie and it reminded Baird of Joe Pesci's character in the movie, Home Alone. Baird Decl. ¶ 23. Baird greeted Garner, "hey Home Alone bandit guy." Baird Decl. ¶ 23. Garner gave Baird a look and Baird left him alone.

Baird and Garner's work stations are separated by a chain link fence and gate that Baird had keys to. Baird Decl. ¶ 24. There would be days Baird would not go through

**10**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

the gate and other days where he would have to do so more than 20 times. Baird Decl. ¶ 24; Valera Depo., at 28:7-12. Baird would also have to go through the gate to access the restrooms. Baird Decl. ¶ 24.

Around noon on March 10, 2021, about four hours after Baird had greeted Garner, Baird had to obtain materials and needed to go through the gate and past Garner's workstation. Baird Decl. ¶ 25. Baird started walking through the area, Arroyoavila was not present. Baird Decl. ¶ 25.

Garner could be hot tempered. Valera Depo., at 31:21-24. After Baird entered the area, Garner came up quickly to Baird. Baird Decl. ¶ 26. Garner was agitated, upset and aggressive. Baird Decl. ¶ 26. Garner's sleeves were rolled up, showing his heavily tattooed arms. Baird Decl. ¶ 26. Garner accused Baird of repeating the Home Alone comment to Garner's supervisor, James Wilson. Baird Decl. ¶ 26. Garner's belief was mistaken, Baird had not discussed the comment with anyone. Baird Decl. ¶ 26.

Garner got face to face with Baird. Baird Decl. ¶ 27. Baird did not lay a hand on Garner, Baird did not chest bump Garner. Baird Decl. ¶ 27. Baird's right arm was in a sling. Baird Decl. ¶ 27. Garner gave Baird a two-handed shove, Baird stumbled backwards into shelving. Baird Decl. ¶ 27. Garner started screaming at Baird and at that point Baird shouted back at Garner, they exchanged some words. Baird Decl. ¶ 27. Baird then told Garner, "You just assaulted me, you're going to get fired." Baird Decl. ¶ 27.

Wilson, from some distance, witnessed Cooper and Baird really close to each other and then saw Cooper shove Baird. Wilson Depo., at 20:5-22, 21:20-22:3. Wilson did not have reason to believe Baird had shoved Cooper or initiated physical contact with Garner. Wilson Depo., at 23:6-8, 31:6-12. Wilson terminated Cooper's employment because he assaulted Baird. Wilson Depo., at 30:3-10. Cooper's justification for the shove was he believed Baird insulted him when he referred to him as the Home Alone bandit. Wilson Depo., at 23:20-24:8.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA

Case No.: 3:22-cv-00060-LL-BGS

Baird turned around and started walking to report the Garner's assault to Sim. Baird Decl. ¶ 28; Sim Depo., at 24:10-16. Wilson approached them both at the time and told Garner to calm down and took Cooper elsewhere with him. Baird Decl. ¶ 28; Wilson Depo., at 22:4-10; Valera Depo., at 36:14-18. Baird told Garner he was going to report the assault to Sim. Baird Decl. ¶ 28; Valera Depo., at 35:18-23.

Baird continued working the rest of the day, finishing his regular shift. Baird Decl. ¶ 29; Sim Depo., at 24:24-25:4. Baird worked the full day and went home. Baird Decl. ¶ 29. That evening, when he was at home, Baird was contacted by Leidos human resources department, who suspended him. Baird Decl. ¶ 29.

**F.      Baird is Investigated and Terminated for Cooper's Assault of Baird**

Robert Athing is a corporate investigator, having worked inside Leidos' insider threat team since 2008. Athing Depo., at 9:2-14. Athing determined he wanted to speak to a total of six persons. Athing Depo., at 27:6-11. Athing conducted the interviews by telephone and was never physically at location. Athing Depo., at 22:8-20.

About one week later, Baird had a phone conversation with Robert Athing and a woman from human resources. Baird Decl. ¶ 30. Athing told Baird he was investigating. Baird cooperated and told them the truth: that he had made the Home Alone comment, that later that day Garner had assaulted him, and that he was on his way to report it to Sim when Wilson showed up. Baird Decl. ¶ 30; Athing Depo., at 28:11-29:11.

During the conversation, the woman asked Baird about making threats against the President and other outrageous comments. Baird Decl. ¶ 30. Baird denied making threats to the President and other outrageous comments. Baird Decl. ¶ 30; Athing Depo., at 31:24-32:10. Baird asked her the source of the alleged comments, which was not provided to Baird. Baird Decl. ¶ 30. The allegation regarding shooting the President was unsubstantiated. Athing Depo., at 33:13-18. A week later, Leidos fired Baird. Baird Decl. ¶ 30.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

When Wilson was interviewed as part of the investigation, no one asked Wilson about Baird's political beliefs. Wilson Depo., at 27:1-15. Wilson never heard Baird claim to be a racist. Wilson Depo., at 27:18-20. While Arroyoavila told Wilson that Baird was a racist, Wilson did not hear such an accusation from Garner, Valera or Angelo. Wilson Depo, at 27:21-28:2, 28:4-11.

Garner did not tell Athing about political comments allegedly made by Baird. Athing Depo., at 40:12-16. While Black Lives Matter was discussed, Athing doesn't recall the specifics or context. Athing Depo., at 48:21-49:21.

Athing took notes during his interviews and then destroyed them eight months later. Athing Depo., at 49:22-50:20. After the interviews were completed, Athing sent a report to the Corrective Action Review Committee, consisting of Sim, legal, workplace relations, and human resources. Athing Depo., at 53:19-54:1. The decision to terminate was made collectively by the Committee, including a regional director. Athing Depo., at 53:10-54:1. The Committee elected to terminate Baird for violating the workplace violence policy. Athing Depo., at 68:18-69:6.

Athing contends co-workers found Baird annoying because he did not share their political views. Athing Depo., at 72:20-73:2. Athing doesn't recall the timing of the alleged conversation with Arroyoavila that occurred prior to Garner's assault of Baird. Athing Depo., at 83:19-84:6.

Arroyoavila did not see the incident. Athing Depo., at 84:7-10. Arroyoavila did not get in trouble for telling Baird to go back to Canada. Athing Depo., at 84:15-25. Athing does not know whether Baird's comments about the "upcoming civil war" were not substantiated. Athing Depo., at 86:3-9. Wilson never told Athing they were bumping chests, only that they were very close to each other. Athing Depo., at 87:10:22. In the interview of Sim, Sim indicated Baird did talk politics and was contrite and apologetic when counseled it for years ago. Athing Depo., at 88:8-89:7. Sim acknowledged he himself had not heard Baird make racial comments, comments about civil wars, capital riots or shooting a president. Athing Depo., at 88:8-89:7.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

Valera learned of the investigation from Arroyoavila and Angelo. Valera Depo., at 39:7-16. However, no one spoke to Valera. Valera Depo., at 39:17-24. Valera could see Arroyoavila would be biased against Baird. Valera Depo., at 41:11-13. Valera did not find Baird's political beliefs offensive. Valera Depo., at 54:4-6. Valera did not observe Baird threaten violence to anyone over political beliefs. Valera Depo., at 54:7-11, 54:17-19. Valera did not hear Braid threaten to shoot the president. Valera Depo., at 54:20-22.

It was common for workers to converse occasionally throughout the work day. Valera Depo., at 57:21-58.1. Valera never got the impression Baird spent too much time discussing politics. Valera Depo., at 58:10-13. Valera believes Garner should have been fired and understands why Garner sued given that he was the victim in the incident. Valera Depo., at 66:1-8, 66:12-14. Valera doesn't think Baird should have been fired. Valera Depo., at 66:22-25.

Valera believes he should have been interviewed regarding Garner's assault of Baird. Valera Depo., at 67:5-8. Valera believes its strange that Arroyoavila was interviewed when he didn't observe the incident but Valera wasn't when he did observe it.Valera Depo., at 67:14-25. Veneracion aslo was interviewed despite not observing the incident. Valera Depo., at 68:1-5.

## III. APPLICABLE LAW

Summary judgment can only be granted "if the movant shows that there is no dispute as to any material fact." Fed. Rules Civ. Proc. Rule 56(a). "Summary judgment is an extreme remedy and one which is not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Weber v. Towner County*, 565 F.2d 1001, 1005 (8th Cir. 1977). Summary judgment "does not usually provide a satisfactory approach in tort cases." *Id*.

**14**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

The movant has the initial burden to show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In passing upon a motion for summary judgment the court is required to view the facts <u>in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences</u> to be drawn from the underlying facts disclosed in the pleadings, depositions and affidavits filed in the case." *Weber*, supra, 565 F.2d at 1005 (emphasis added).

"It is not the province of a court to spin such evidence in an employer's favor when evaluating its motion for summary judgment." *Chuang v. Univ. of California Davis, Board of Trustees*, 225 F.3d 1115, 1129.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The nonmoving party is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, supra, 477 U.S. at 324. Further, "as a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Chuang*, supra, 225 F.3d at 1124 (citing *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

"Any doubt as to the existence of a genuine issue for trial is resolved against the moving party." *Becker v. Tenenbaum-Hill Ass'n, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

"To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor, but 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Evans v. Sears*

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

*Logistics Servs., Inc.*, 2011 WL 6130885 * 6 (N.D. Cal. 2015) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "It is sufficient that the claimed factual dispute be shown to require a jury or judge to resolve the parties differing versions of the truth at trial." *Id* (citing *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

**IV. ARGUMENT**

The motion for summary judgment should be denied. The material facts relating to Baird's termination are in genuine dispute. There is a genuine dispute as to whether Baird assaulted Cooper. There is a genuine dispute as to the provocative political statements Leidos alleges Baird made. Summary judgment should not be granted when there is a genuine dispute over the factual underpinnings of the termination.

Leidos argument that Baird did not undertake protected activity under FEHA or CFRA is false as is the argument that Baird cannot show a causal connection between his protected activity and his retaliatory discharge. [2]

Leidos chief argument that it had a legitimate, non-discriminatory reason for terminating Baird fails. As mentioned above, the genuine dispute of material facts shows the decision is false. Baird's prior good performance, the timing of the termination, the subjective basis of the termination decision, digging up water under the bridge to justify the termination and a questionable investigation, when combined with the false reason are sufficient to show pretext. That a regional director in conjunction with a committee made a decision to terminate Baird is sufficient for the jury to decide the issue of punitive damages.

Baird should be allowed to proceed on his claims for fourth cause of action for FEHA retaliation, his sixth cause of action for violation of CFRA rights, his seventh

---

[2] Baird does not oppose summary adjudication as to his first cause of action for Labor Code § 6310 retaliation, second cause of action for failure to provide reasonable accommodation, third cause of action for failure to engage in the interactive process, and fifth cause of action for failure to prevent discrimination or retaliation.

**16**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

cause of action for wrongful termination in violation of public policy and his prayer for punitive damages.

### 1.   Summary judgment cannot be granted where there are several genuine issues of material facts

Leidos facts 32 through 51 relate to the alleged factual basis for the termination of his employment. Baird disputes Leidos' material facts numbers 27, 32, 34, 35, 36, 38, 41, 42, 43, 44, 46, and 49.

That there is a genuine dispute is no surprise. Typically, the employer relies on admissions in an employee's testimony to show no material dispute. Only one of the 19 termination facts relies on Baird's deposition testimony and that only for Baird's admission he was in the shipping area where Garner worked when the incident took place. Leidos did not meet its initial burden to show there is no genuine issue of material fact. *Celotex*, supra, *4*77 U.S. at 323.

### 2.   Baird engaged in activity protected under FEHA and activity protected under CFRA

Leidos argues Baird did not engage in protected activity under California's Fair Employment and Housing Act.[3] It is undisputed Baird requested a reasonable accommodation. Baird Decl. ¶ 21; Ex. C. "The FEHA also prohibits an employer ... from retaliating against an employee who requested reasonable accommodation[.]" *Ross v. County of Riverside*, 36 Cal.App.5th 580, 593 (2019); *Cornell v. Berkeley Tennis Club*, 18 Cal.App.5th 908, 942-943 (2017); Gov't Code § 12940(m)(2)(FEHA makes it unlawful to "retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted.") Clearly, Baird's requests for reasonable accommodations are protected activity under FEHA.

_____

[3] Leidos Motion, pg. 14, lines 8-10.

**17**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

There is no dispute Baird took protected medical leave, the parties even agree that Leidos provided the medical leave. UMF 22-25; Baird Decl. ¶¶ 17-21. The California Family Rights Act makes it unlawful for an employer to discharge an individual because the individual took medical leave provided by CFRA. *Rogers v. County of Los Angeles*, 198 Cal.App.4th 480, 490-491 (2011);  Gov't Code § 12945.2(l); 2 Cal Code Regs. § 7297.7. By taking medical leave and requesting reasonable accommodations, Baird engaged in protected activity.

### 3.      Baird can establish a causal connection between his protected activity and his unlawful discharge

Leidos argues Baird cannot establish a causal connection between his protected activity and Leidos' termination of Baird's employment. [4] Baird submitted his work restrictions for which he sought a reasonable accommodation on February 22, 2021. Baird was suspended on March 11, 2023 and discharged on March 26, 2021. Baird was terminated within a month of submitting his work restrictions. That it happened all in about a month is enough to show a causal connection.

"Temporal proximity between the protected activity and the adverse action is sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action*." Glynn v. Superior Court*, 42 Cal.App.5th 47, 56 (2019); An inference of causation may arise based on the timing of an adverse employment action. *Passantino v. Johnson & Johnson Consumer Products, Inc*., 212 F.3d 493, 507 (9th Cir. 2000); Specifically, when an adverse employment action occurs "close on the heels" of the protected activity, the timing alone may be sufficient to support an inference of causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.2000) (holding on summary judgment that causation could be inferred based on timing of adverse employment actions). *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982) ("evidence of circumstances that justify an inference of

---

[4] Leidos Motion, pg. 15, lines 15-18; pg. 22, lines 4-8.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

retaliatory motive, such as protected conduct closely followed by adverse action."); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). Baird has established causation.

### 4.  Baird has provided evidence that the stated reasons for the termination were false which intentional retaliation can be inferred from

In most employment cases, "the plaintiff will lack direct evidence of the employer's discriminatory intent, which is a necessary element to prevail. Consequently, certain rules regarding the allocation of burdens and order or presentation of proof have developed in order to achieve a fair determination of the elusive factual question of intentional discrimination." *Sada v. Robert F. Kennedy Medical Center*, 56 Cal.App.4th 138, 148-149 (1997).

One such way to show circumstantial evidence of retaliation is to show the "employer's stated nondiscriminatory reason with substantial evidence of its falsity[.]" *Hersant v. Dep't of Social Servcies*, 57 Cal.App.4th 997, 1004-1005 (1997). Baird has provided substantial evidence of falsity of the nondiscriminatory reason.

Baird was in Garner's work area because Baird had to obtain materials. Baird Decl. ¶¶ 24, 25. Garner got in Baird's face and gave Baird a two-handed shove. Baird Decl. ¶ 27. Baird did not chest bump or touch Garner. Baird Decl. ¶ 27. Wilson did not believe Baird had chest bumped Cooper or initiated physical contact with Garner. Wilson Depo., at 23:6-8, 31:6-12; Athing Depo., at 87:10:22.  Baird also reported the assault. Baird Decl. ¶ 28; Valera Depo., at 35:18-23. The inference being he believed he was a victim rather than the aggressor.

Similarly, there is substantial evidence that Baird was not the crazy Trumper he has been painted as by Leidos. Baird denies making the outrageous comments regarding the President or the insurrection. Baird Decl. ¶¶ 10-13, 30. Baird's performance evaluations did not reference such comments or any sort of bullying of co-workers. Baird Decl. ¶ 7, Ex. A & B. Wilson, Sim, Valera each did not hear such comments from

Baird. Valera Depo., at 54:7-11, 54:17-22; Wilson Depo., at 27:1-15; Wilson Depo., at 27:18-20. Wilson did not hear accusations that Baird was racist from Garner, Valera or Angelo. Wilson Depo, at 27:21-28:2, 28:4-11. Garner did not tell Athing about political comments allegedly made by Baird. Athing Depo., at 40:12-16. The comments about the "upcoming civil war" and "shooting" the President were unsubstantiated. Athing Depo., at 33:13-18, 86:3-9.

In summary, there is substantial evidence to show Leidos's reasons for terminating Baird are false. Baird is not arguing it was a wrong decision, mistaken or unwise, but rather that Baird did not commit the acts that got him fired. *Hersant,* supra, 57 Cal.App.4th at 1004-1005. No further evidence of retaliatory animus is required where "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993).

**5.      Leidos justification for the decision is based on subjective belief that Baird was somehow responsible for the assault and an annoying bully at work and accordingly can give an inference of intentional retaliation**

Leidos terminated Baird based on subjective considerations. There is no dispute Baird did not shove Garner but nonetheless Baird was blamed as the aggressor and Leidos deemed his political speech as hostile, annoying and bullying. These are all subjective considerations. Subjective decision making provides an opportunity for unlawful retaliation and entitles a plaintiff to benefit of an inference of retaliation. *Burrus*, supra, 683 F.2d at 342. Leidos termination decision is <u>completely</u> based on subjective considerations and as such, Baird is entitled to the benefit of an inference of retaliation. See e.g., *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) ("Liu's evidence that Tran's subjective evaluation served as the central, if not sole,

**20**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

factor in her termination is significant. Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly 'susceptible of abuse and more likely to mask pretext.'"); *Lujan v. Walters*, 818 F.2d 1051, 1057 (10th Cir. 1987)("subjective criteria such as 'dedicated' and 'enthusiasm' may offer a convenient pretext for giving force and effect to prejudice, and create strong inference of employment discrimination.").

### 6.    Leidos shoddy investigation supports an inference of intentional retaliation

Leidos investigation was questionable and shoddy. The interviews were conducted by phone only. Athing Depo., at 22:8-20. Wilson was interviewed but not asked about political beliefs or racism. Wilson Depo., at 27:1-15, 27:18-20. The investigator does not recall the specifics or context of information sought in the investigation. Athing Depo., at 48:21-49:21. Despite the fact that it was allegedly so serious that the investigator sought the intervention of the FBI, the investigator destroyed his notes. Athing Depo., at 49:22-50:20.

The investigation relied on persons that did not see the incident. Athing Depo., at 84:7-10; Valera Depo., at 68:1-5. The investigation relied on persons such as Arroyoavila who had a bias against Baird. Valera Depo., at 41:11-13. Persons such as Valera were not interviewed. Valera Depo., at 67:5-8. The investigation was helter-skelter and should raise an inference of intentional retaliation. See e.g., *Nazir v. United Airlines,* 178 Cal.App.4th 243, 277 (2009) (the court found that there was evidence of discrimination when the employer conducted an investigation with a preordained conclusion). The evidence supports the purpose of the investigation was to have a preordained conclusion Baird was in the wrong.

In *Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95 (2004), the report of investigation contained numerous indicia from which a jury could find it was biased in favor of the employer, including the investigator's failure to investigate exculpatory

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

evidence of any kind while accepting the employer's version of the incident under investigation at face value. *Id*. at 120-121. The evidence shows the investigator ignored unfavorable evidence such as Baird's denials and lack of supporting evidence that Baird was the aggressor, and lack of evidence that Baird had made threats. A sham investigation can permit an inference of a causal connection between the protected activity and the adverse employment action. *Mathieu v. Norrell Corp.*, 115 Cal.App.4th 1174, 1188 (2004).

### 7.     Temporal proximity also is indicative of pretext

Not only can temporal proximity be used to demonstrate a causal connection, it is also indicative of pretext, which may be inferred by the timing of the termination decision. *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.App.4th 1216, 1235 (2006)[5] ("Close proximity in time of an adverse action to an employee's resistance or opposition to unlawful conduct is often strong evidence of a retaliatory motive.)

### 8.     Other facts show inconsistencies and weakness in the termination decision

Pretext may be found where the employer has given shifting, contradictory, implausible, uninformed or baseless justifications for its actions. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 363 (2000). Arroyoavila told Baird to "go back to Canada" and faced not even a verbal warning. Athing Depo., at 84:15-25. This makes no sense in the context of the alleged reasons for Baird's termination. Other implausible facts include given the scope of Baird's bullying and hostility, there is nothing in his evaluations discussing that. Had Baird been such a horrible person, it wouldn't have taken years to be found out. Baird continued working the rest of the day and worked the whole next

---

[5]  Disapproved on other grounds (that individuals may not be liable for retaliation) in *Jones v. Lodge at Torrey Pines*, 42 Cal.4th 1158 (2008).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

day, which shows at the time, his supervisors didn't perceive him to be the problem. In contrast, Cooper was fired immediately because at the time, he was the problem. Leidos also went straight to termination which is unjustified by the record.

### 9.     Baird presents clear and convincing evidence of fraudulent and oppressive conduct

"The primary purposes of punitive damages are punishment and deterrence of like conduct by the wrongdoer and others." *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 810 (1981). "A plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." California Civil Code § 3294(a).

Baird need only establish (by clear and convincing evidence) Leidos intended the consequences that were substantially certain to occur from its wrongful conduct. *Schroeder v. Auto Driveway Co.,* 11 Cal.3d 908, 922 (1974); *George F. Hillenbrand, Inc. v. Insurance Co. of North America*, 104 Cal.App.4th 784, 816 (2002).

A plaintiff may recover punitive damages for a violation of FEHA. *Commodore Home Systems v. Superior Court*, 32 Cal.3d 211, 214-215, 220-221 (1982); *Monge v. Superior Court*, 179 Cal.App.3d 502, 508 (punitive damages available because discrimination and wrongful termination claims are in tort).

Leidos painted Baird as a racist, Insurrection-supporting, President Biden-shooting madman to terminate his employment. Leidos ignored the great weight of information that showed he was not any of those things. Leidos painted Baird as an aggressor without basis to have him fired. This is despicable, fraudulent conduct.

Further, the termination collectively made by Committee and included a regional director, legal, human resources, and Baird's manager. Athing Depo., at 53:10-54:1. This committee meets the standard for managing agents articulated in *White v. Ultramar, Inc.*, 21 Cal.4th 563, 577 (1999). Summary adjudication on punitive damages should be denied.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS

## V. CONCLUSION

Based on the foregoing, Leidos' motion for summary judgment should be denied in its entirety. There are genuine issues of material fact such that Baird's claims for FEHA retaliation, violation of CFRA rights, the derivative wrongful termination claim, and prayer for punitive damages be allowed to proceed to jury trial.

DATED:  April 13, 2023                    ROMERO LAW, APC

By: _____
**Alan Romero**
**Robert S. Myong**
**Elizabeth Villarreal**
**Attorneys for Plaintiff**
**STEVEN BAIRD**

---

**24**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MSJ / MSA**

Case No.: 3:22-cv-00060-LL-BGS