Alan Romero (SBN 249000)
Robert S. Myong (SBN 262097)
Elizabeth Villarreal (SBN 327937)
Email: private@romerolaw.com
ROMERO LAW, APC
251 S. Lake Avenue, Suite 930
Pasadena, CA 91101-4873
Telephone: (626) 396-9900
Facsimile: (626) 396-9990

Attorneys for Plaintiff
STEVEN BAIRD

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BAIRD, an individual;<br><br>    Plaintiffs,<br><br> vs.<br><br>LEIDOS, INC., a Delaware corporation; and DOES 1-99, inclusive;<br><br>    Defendants. | Case No.: 3:22-cv-00060-BGS<br><br>**PLAINTIFF STEVEN BAIRD'S SEPARATE STATEMENT OF GENUINE DISPUTED MATERIAL FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*Assigned to: Judge Linda Lopez*<br>*Referred to: Magistrate Judge Bernard G. Skomal*<br><br>Hearing Date: April 27, 2023<br>State Complaint filed:  November 30, 2021<br>Trial Date: None Set |

//

//

**1**
OPPOSITION SEPARATE STATEMENT

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff STEVEN BAIRD hereby submits this Separate Statement of Genuine Disputed Material Facts in Opposition to Defendant LEIDOS, INC.'S Motion for Summary Judgment / Adjudication.

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff Steven Baird ("Baird") began working for Leidos on November 26, 2018 as a Machinist/Mechanical Technician located in Vista, CA. Ex. 7; Ex. 1, 38:3-25. | Undisputed. |
| 2. Leidos often builds prototypes for its government customers as part of its services and Baird would machine prototype parts based on direction he received from the engineering department. Ex. 1 40:13-46:21. | Undisputed. |
| 3. Baird's supervisor was John Sim whose title was Mechanical Engineering Manager. Sim Decl. ¶ 2 | Undisputed. |

**2**

OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 4. Baird had a unique username and password that allowed him to log into Leidos' computers and access the intranet and internet. He would also be able to utilize the printers through his unique login credentials. Ex 1, 43:18-44:4. | Undisputed. |
| 5. Baird testified that he only submitted 3 complaints to Leidos including: (1) that he should be allowed to walk away from a running machine and not be forced to stay by it; (2) that Leidos purchased large pieces of material which required them to be cut to size; and (3) that there was a single instance of a rat infestation in a car he maintained. Ex. 1, 47:1-24, 58:1-20, 59:7-14, 60:8-62:24, 98:16-102:22, 102:21-124:5; Ex. 2, 137:14-144:23. | Undisputed. |

**3**

**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
| --- | --- |
| 6. Baird admits that the Safety Manual's rule requiring an individual to be present when a machine is running does not create safety issue. Ex. 1, 63:3-20. | Undisputed. |
| 7. Baird was qualified and authorized to use all the machines in the Leidos Machine Shop. Ex. 14; Ex. 1, 47:25-48-2, 53:10-55:1, 56:17-57:2; Sim Decl. ¶ 4-5. | |
| 8. In Module 1 "Basic Machine Shop" of the Machine Shop Safety Manual it lists thirty-four safety rules and number twenty-nine states "Never leave a running machine unattended". Ex. 14 p. 6; Ex. 1, 57:8-25, 58:1-20; Sim Decl. ¶ 4-5; King Decl. ¶ 2-5. | Undisputed. |
| 9. After an employee completes Module 1 "Basic Machine Shop" training, they must complete Module 2 "Advanced Machine | Undisputed. |

**4**

OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Shop" training. Ex. 14 p. 6; Sim Decl. ¶ 4-5; King Decl. ¶ 2-5. | |
| 10. In Module 2 "Advanced Machine Shop" of the Machine Shop Safety Manual, the policy specifies the rules governing the milling machine. In bullet point seventeen it states "Do not leave running machine unattended". Ex. 14 p. 19; Sim Decl. ¶ 4-5; King Decl. ¶ 2-5. | Undisputed. |
| 11. The Leidos Safety Manual required all running machines to be attended. Ex. 14; Sim Decl. ¶ 4-5; King Decl. ¶ 2-5. | Undisputed. |
| 12. Baird admitted he understood the contents of the Safety Manual. Ex. 1, 57:8-25, 58:1-20. | Undisputed. |
| 13. Baird admitted he received personal protective equipment to clean up the rat infestation. Baird could not specify if he asked for any additional personal protective equipment. Ex. 2, 142:24-143:14. | Undisputed. |

OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 14. On or around September 3, 2020, John Sim noticed Baird left the Mill Machine running while unattended. Ex.16-17; Ex. 1, 57:8-25, 58:1-20; Ex. 4, 42:3-43:12, 33:18-35:12; Sim Decl. ¶ 6. | Undisputed. |
| 15. Mr. Sim waited at the mill machine until Baird returned and then counseled him on Leidos' policies regarding never leaving a running machine unattended. Ex.16-17; Ex. 1, 57:8-25, 58:1-20; Ex. 4, 42:3-43:12, 33:18-35:12. | Undisputed. |
| 16. Mr. Sim then scheduled a meeting with Sim, Baird and the corporate safety officer Jeff King to "Meet in person to review machine shop safety requirements." This meeting took place on September 8, 2020. Exs. 16-17; Ex. 1, 57:8-25, 58:1-20; | Undisputed. |

**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Ex. 4, 42:3-43:12, 33:18-35:12; Sim Decl. ¶ 6 | |
| 17. Sim, Baird, and King met on September 8, 2020 to discuss Baird leaving the mill machine unattended while it was running. After the meeting, Mr. Sim sent an email to Baird and King summarizing the discussion and stated: "It was determined that all current safety protocols as outlined in the current Vista Machine Shop Certification document are valid and are expected to be adhered to without exception. The term "attended" was agreed upon to mean: a body physically in the shop to address any issues that may arise." Exs. 16-17; See also Ex. 1, 57:8-25, 58:1-20; Ex. 4, 42:3-43:12; Sim Decl. ¶ 6 | Undisputed. |

**7**

**OPPOSITION SEPARATE STATEMENT**

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 18. Mr. Sim also agreed to post a list of phone numbers Baird can utilize to have someone there if the mill machine cannot be paused and Baird needs to leave the shop with the mill running. Baird admits using the list to call others. Exs. 16- 18; Ex. 1, 64:1-66:10; Ex. 4, 42:3-43:12, 33:18-35:12; Sim Decl. ¶ 7. | Undisputed. |
| 19. On September 10, 2020 Mr. Sim notified others in the shop that there will be training on stopping the mill machine in Baird's absence and that he will be posting their phone numbers for Baird to call if Baird needs to step away from the machine. Mr. Sim again highlighted that "This will allow the safety guidelines to be followed that state: "never leave a running machine unattended." (Id.) At deposition | Undisputed. |

**8**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Baird acknowledged he used the phone list when needed. Ex. 18; Ex. 1, 64:1-66:10; Ex. 4, 42:3-43:12, 33:18-35:12; Sim Decl. ¶ 7-8. | |
| 20. Baird acknowledged that he knew the Safety Manual prohibits leaving a running machine unattended. Ex. 1, 57:8-25, 58:1-20. | Undisputed. |
| 21. Baird was also listed on the authorization matrix which shows that he passed both modules identified in the Safety manual. Ex. 14 p. 23; Sim Decl. ¶ 4-5; King Decl. ¶ 2-5. | Undisputed. |
| 22. On or around January 18, 2021 Baird was involved in an accident, while riding his motorcycle, where he injured his arm. Ex. 1, 68:10-74:1. | Undisputed. |
| 23. Baird was approved for all the medical leave he requested. His | Undisputed. |

**9**

OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| approved leave was from January 19, 2021 through February 22, 2021. While Baird was on leave Baird also had a heart procedure done. Ex. 19; Ex. 1, 68:10-74:1,75:15-76:7; Sim Decl. ¶ 10-11. | |
| 24. Baird's estimated last day of leave was February 22, 2021 with his estimated first day to return to work being February 23, 2021. However, Plaintiff decided he was able to return to work a day early on February 22, 2021 making his actual last day of leave on February 21, 2021. Ex. 19; Ex. 1, 68:10-74:1,75:15-76:7; Sim Decl. ¶ 10-11. | Undisputed. |
| 25. Baird was granted all the leave he requested. Ex. 2, 151:21-152:1. | Undisputed. |
| 26. Upon returning to work on February 22, 2023 Baird submitted his work restrictions, | Undisputed. |

**10**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| and they were approved. Ex. 19 – 23; Ex. 1, 76:8-23; Ex. 4, 14:9-17:24; Sim Decl. ¶ 10-12. | |
| 27. Baird's work restrictions limited him from lifting anything over Baird's right shoulder and not lifting anything above 20 pounds. Ex. 1, 76:8-23; Ex. 20; Ex. 4, 14:9-17:24; Sim Decl. ¶ 10-12. | Disputed. The restrictions that stated "no reaching above the right shoulder" and "no lifting, carrying, pushing, pulling, more than 0 pounds." Baird Decl. ¶ 21, Ex. C. |
| 28. Baird testified that if he was unable to perform a movement required by his job duties he would simply ask anyone in the warehouse for assistance and wait until assistance was provided. Ex. 2, 147:11-149:23. | Undisputed. |
| 29. Baird acknowledged he received the accommodations he asked for and Baird did not make any other requests for accommodations to Leidos. Ex. 1, 76:8-78:3; Ex. 2,147:11-149:23., | Undisputed. |

**11**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 30. Baird received assistance with lifting throughout his employment. Ex. 5, 11:21-12:7, 19:11-20:1; Ex. 1, 76:8-78:3; Ex. 2, 147:11-149:23. | Undisputed. |
| 30. | |
| 31. Baird testified that Leidos never denied any of his requested accommodations. Ex. 1, 76:8-78:3. | Undisputed. |
| 32. On or around March 10, 2023 Baird left his work area and entered the work area of Ian Arroyoavila ("Arroyoavila") and Cooper Garner ("Garner") and got into a heated discussion with both individuals. Ex. 25; see also Ex. 26-31; See also Ex. 1, 78:19-83:24; Ex. 4, 24:10-25:22; Ex. 5, 20:5- 26:8; Athing Decl. ¶ 3-6. | Disputed. Baird doesn't dispute he left his work area. He disputes Arroyoavila was present and that he got into a heated discussion with both individuals. Baird Decl. ¶¶ 24-25. |
| 33. Baird's work area was gated off from the inventory and shipping area where Ian Arroyoavila and Cooper Garner worked. Ex. 6, | Disputed. Baird had keys to the gate and needed to go through the gate often, depending on the situation. |

**12**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 9:23-10-3, 14:9-16; see also Exs. 25-31. | Baird Decl. ¶ 24. |
| 34. Baird got into a verbal dispute with Arroyoavila and then approximately 10 minutes later Baird confronted Garner where he was working. Ex. 25 and Ex. 30; see also Ex. 26-31; Athing Decl. ¶ 3-6. | Disputed.<br><br>Arroyoavila was not present. There was no heated dispute.<br><br>Baird Decl. ¶ 25. |
| 35. Baird approached Garner getting inches from his face and the two were "chest bumping." Baird cornered Garner forcing Garner's back against shelving and stating "Don't be a f***ing pussy, like Ian [Arroyoavila] is" and "We can fight if you want to." Exs. 25-26 & Ex. 30; see also Ex. 27-31. | Disputed.<br><br>Garner, a hot tempered, co-worker was upset about the Home Alone comment and attacked Baird. Baird did not touch Garner. Baird's right arm was still in a sling.<br><br>Baird Decl. ¶¶ 25-27. |
| 36. Garner stated he felt threatened and intimidated and he pushed Baird away to create some distance. Exs. 25-26 & Ex. 30; see | Disputed.<br><br>Garner was threatening, Garner engaged Baird. Also, Wilson saw Garner being aggerssive. |

**13**

OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| also Ex. 27-31. | Baird Decl. ¶¶ 25-27; Wilson Depo., at 23:6-8, 31:6-12. |
| 37. Baird is several inches taller and approximately 100 pounds heavier than Garner. Ex. 3, 36:20-39:25. | Undisputed. |
| 38. Once Garner pushed Baird, the two were separated by Garner's supervisor James Wilson. Exs. 25- 26 & Ex. 30; see also Ex. 27, 31; Ex. 5, 20:5-26:8. | Disputed. Baird was already going to report the assault to Sim when Wilson arrived. Baird Decl. ¶ 28; Wilson Depo., at 22:4-10; Valera Depo., at 36:14-18. |
| 39. Both Baird and Garner were permitted to work the remainder of that day but were subject to administrative leave, pending an investigation. Ex. 24; Ex. 25; Ex. 30. | Disputed. Wilson fired Garner that day. Baird was on March 11, 2021 after completing his shift. Baird Decl. ¶ 29; Wilson Depo., at 30:3-10. |
| 40. After a full investigation was conducted, Leidos terminated Baird's employment and removed Garner from performing on | Disputed. The investigation wasn't full. Leidos did not speak to Valera or ask Wilson questions. |

**14**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Leidos contracts for misconduct. Ex. 32; see also Exs. 25 - 31; Ex. 3, 68:18-70:17, 75:23-78:16; Ex. 5, 29:19-30:10. | Wilson Depo., at 27:1-15; Valera Depo., at 67:5-8. |
| 41. A full investigation was conducted where Robert Athing whose job title is "Investigator – Corporate Security" was in charge of investigating the altercation between Baird and Garner for workplace violence. Katie Reis is the Senior Workplace Relations Manager who conducted an investigation into workplace relations between Baird and other Leidos employees. Ex. 25, and Ex. 30; Ex. 3, 9:18-10:4, 18:20-40:24; See also Ex. 26-29. | Disputed. The investigation wasn't full. Leidos did not speak to Valera or ask Wilson questions.<br><br>Wilson Depo., at 27:1-15; Valera Depo., at 67:5-8. |
| 42. Interviews during the investigation substantiated the physical confrontation between Baird and Garner. Multiple interviews were conducted on | Disputed. The investigation merely substantiated Cooper shoved Garner. Wilson did not have reason to believe Baird had shoved Cooper or initiated physical contact with |

**15**

Case No.: 3:22-cv-00060-LL-BGS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| March 15-16, 2021 which further supported a finding that Baird instigated the physical altercation. Ex. 25, and Ex. 30; See also Ex. 26-31; Ex. 3, 61:5-65:9; See also Ex. 6, 33:4-34:17, 46:4-47:2; Athing Decl. ¶ 3-6. | Garner. Neither Arroyoavila or Veneracion were present to witness. Wilson was some distance away. The investigation did not substantiate Baird instigated the altercation. Baird Decl. ¶ 30; Wilson Depo., at 23:6-8, 31:6-12; Athing Depo., at 84:7-10; Valera Depo., at 67:14-68:5. |
| 43.   During the investigation, several individuals stated that Baird would routinely bully and antagonize co- workers, make racist and inflammatory statements to other employees and generally made other coworkers uncomfortable. Ex. 25, and Ex. 30; See also Ex. 26-29; Ex. 4, 21:16-24:9, 32:5-33:16, 41:2-21; Sim Decl. ¶ 15; Reis Decl. ¶ 5-6 | Disputed. Baird denied it. The alleged inflammatory statements were not substantiated. Baird Decl. ¶ 30; Athing Depo., at 86:3-9; Athing Depo., at 88:8-89:7; Wilson Depo., at 27:1-15; Wilson Depo., at 27:18-20. |

**16**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 44.    Prior to President Joe Biden's inauguration in January 2021 it was reported that Baird stated he was going to D.C. and put a bullet in President Biden's head to prevent him from becoming president. The comment was so concerning that it was reported the U.S. Secret Service. Ex. 25, and Ex. 30; See also Exs. 26-29; Ex. 3, 33:13-34:3,43:11-22; Ex. 6, 25:8-23, 54:23- 56:11; Athing Decl. ¶ 3-6; Reis Decl. ¶ 5-6. | Disputed.<br><br>Baird did not make these comments.<br><br>Baird Decl. ¶¶ 11-13, 30. |
| 45.    It was reported that Baird is a "racist" and speaks to others disrespectfully. Ex. 25, and Ex. 30; See also Ex. 26-31. | Undisputed. |
| 46.    It was reported that Baird stated that "I wish there was a different outcome at the Capital riots for the people inside voting on the election certification outcome." | Disputed.<br><br>Baird did not make such a comment.<br><br>Baird ¶ 12. Athing Depo., at 86:3-9; Athing |

**17**
OPPOSITION SEPARATE STATEMENT

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Ex. 25, and Ex. 30; See also Ex. 26-31. | Depo., at 88:8-89:7; Wilson Depo., at 27:1-15; Wilson Depo., at 27:18-20. |
| 47. It was reported that around October 2020, Baird stated "A new Civil War is coming white vs. black, you better be ready and have weapons." Ex. 25, and Ex. 30; See also Ex. 26-31. | Disputed. Baird did not make such a comment. Baird ¶¶ 11-13, 30 |
| 48. Mr. Athing is a knowledgeable and experienced investigator who was previously employed as a police offer for 26 years. Mr. Athing has conducted over 500 investigations while at Leidos. Ex. 3, 12:18-16:24. | Undisputed. |
| 49. On March 26, 2021, Plaintiff was terminated due to the findings from the investigation. As discussed with Plaintiff, the reason for his termination is Misconduct: Workplace Violence. Baird's actions were determined to be a violation of the Leidos Policy LP- | Disputed. Plaintiff was terminated in retaliation for protected actiivty. Baird Decl. ¶¶ 1-30; Ex. A-C; Entirety of Exhibits D (Sim Deposition), E (Wilson |

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S CONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| HR-6: Workplace Environment as well as Policy LP-LG-1: Standards of Business Ethics and Conduct. Ex. 32. | Deposition), F (Valera Deposition) and G (Athing Deposition) attached to Romero Decl. |
| 50. "Workplace violence" is defined as "assault, battery, violent acts or threats, including verbal or written threats and/or utterances (e.g., email), which occur in or are related to the workplace which may involve a risk of physical or emotional harm to individuals, or damage to company, contractor, or customer resources or capabilities, etc." Ex. 10, ¶ 3 & 4.1. | Undisputed. |
| 51. Baird believes the only reason he is suing Leidos is because he was wrongfully terminated. Ex. 2, 152:2-20; Ex. 1, 102:4-103:25. | Undisputed. |

///

**19**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS SHOWING DISPUTE

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
| --- | --- |
| 52. Baird is a Canadian who grew up in California, he is purpose driven and cares about civic duty, he was a firefighter for many years. Baird Decl. ¶ 2. | |
| 53. On November 26, 2018, Baird began working at Leidos as a machinist, he worked hard, was reliable and Leidos never had an issue with his work product or capabilities. Baird Decl. ¶ 3. | |
| 54. In late 2019, Baird was verbally counseled by Sim over comments he made in the lunch room that were perceived to be racist. Baird Decl. ¶ 4. Baird had expressed support for secure borders and legal immigration. Baird meant no offense, but the comment offended Efren, a co-**worker,** who as often happens, equated | |

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| advocacy for secure borders and legal immigration as racism against people of color. Baird Decl. ¶¶ 4-5. | |
| 55. Following the verbal counseling, Baird did not discuss the issue with Efren again; the two of them continued to work and got along. Baird never heard anything about the comment again until the investigation some 16 months later. Baird Decl. ¶ 6. | |
| 56. There is no mention of the immigration comment in Baird's performance reviews, which were good. Baird Decl. ¶ 7, ex. A and B. | |
| 57. Sim gave Baird good performance evaluations. Sim Depo., at 18:3-5, 20:1-12, 20:18-21:6. | |
| 58. Leidos builds equipment for the government, including x-rays for border security to detect human smuggling, drug smuggling, dirty | |

**21**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| bombs, illicit contraband, and airport body scanners. Baird Decl. ¶ 8. | |
| 59. There was no Leidos rule or policy prohibiting political discussion in the workplace. Baird Decl. ¶ 9; Wilson Depo., at 14:20-22; Valera Depo., at 18:25-19:2. | |
| 60. Baird talked politics in a civil manner. Baird Decl. ¶ 10. | |
| 61. Valera observed the Baird and Aroryoavila having lively conversations but it never looked like it would turn violent.. Arroyoavila's complaint about Baird was only in reference to Baird's political leaning; Arroyoavila never told Valera Baird was discriminatory. Valera Depo., at 16:3-23, 17:2-4. | |
| 62.  Baird did not have any political posters or items at his work station, Baird did not have political | |

**22**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| bumper stickers on his car, Baird did not wear any clothing that would indicate his political beliefs. Valera Depo., at 24:25-25:7. | |
| 63. While co-workers talked about Baird, no one complained to Wilson, the supervisor about Baird. Baird did not talk politics with Wilson. Depo., 12:18-13:2, 13:9-24, 17:16-19;  Wilson Depo., 14:3-4; Wilson Depo., at 17:5-7; Wilson Depo., at 17:1-4, 20-24. | |
| 64. Baird did not antagonize co-workers or make racist and inflammatory comments. Baird Decl. ¶ 11 | |
| 65. Baird never said he would put a bullet in President Biden's head. Baird Decl. ¶ 11 | |
| 66. Baird never said he wished there was another outcome in the Capital riots. Baird Decl. ¶ 11 | |

**23**
OPPOSITION SEPARATE STATEMENT

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 67. Baird was disappointed in the rioters and told Arroyoavila he did not support the rioters. Baird Decl. ¶ 12 | |
| 68. People discussed politics at work at Leidos, the 2020 election was important to Leidos and its workers. Baird Decl. ¶ 13 | |
| 69. Valera and Baird interacted daily for about 30 minutes to an hour, the interactions were friendly. Valera Depo., at 10:24-11:6. Valera never had a problem with Baird. Valera Depo., at 11:7-15. | |
| 70. The only write up Baird got was resolved satisfactorily in September 2020. Baird Decl. ¶¶ 14-16. Sim Depo., at 35:1-9 | |
| 71. Around December 2020, Baird learned he needed to have heart surgery, which was scheduled for early February 2021 Baird informed Sim and initially | |

**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| scheduled medical leave for the day of the surgery and following week for recovery. Baird Decl. ¶ 17. | |
| 72. On January 18, 2021, Baird suffered a broken arm while trying to help an injured driver. Wilson Depo., at 18:14-25. Baird could barely move his right arm and needed time off to heal, so he contacted Leidos had his medical leave begin the next day, January 19, 2021 and going to February 22, 2021. Baird underwent heart surgery as planned in early February 2021. Baird Decl. ¶¶ 19-20; Wilson Depo., at 18:14-25. | |
| 73. In late February 2021, Baird returned to work. Baird's right arm was in a sling and he had restrictions including "no reaching above the right shoulder" and "no lifting, carrying, pushing, or | |

**25**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| pulling more than zero pounds." Baird Decl. ¶ 21; Ex. C. | |
| 74. Sim was aware Baird had requested medical leave because Baird provided him with doctor's notes regarding leave and also restrictions. Baird was the first employee to present an accommodation request to Sim. Sim had worked at Leidos since 2004. Sim Depo., at 39:23-25, 10:11-13, 14:7-13, 14:23-15:3. | |
| 75. Baird's regular job duties require lifting items weighing between 20 and 50 pounds. Baird Decl. ¶ 22; Sim Depo., at 15:10-13, 16:14-17 | |
| 76. Leidos did provide employees to help Baird lift items, there were times Baird had to wait and wait, getting help did slow work down. Baird Decl. ¶ 22; Wilson Depo., at 19:19-23. | |

**26**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 77. On March 10, 2023, Baird greeted Garner, "hey Home Alone bandit guy." Garner gave Baird a look and Baird left him alone. Baird Decl. ¶ 23. | |
| 78. Baird and Garner's work stations are separated by a chain link fence and gate that Baird had keys to. There would be days Baird would not go through the gate and other days where he would have to do so more than 20 times. Baird would also have to go through the gate to access the restrooms. Baird Decl. ¶ 24; Valera Depo., at 28:7-12. | |
| 79. Around noon on March 10, 2021, about four hours after Baird had greeted Garner, Baird had to obtain materials and needed to go through the gate and past Garner's workstation. Baird started walking through the area, Arroyoavila was not present. Baird Decl. ¶ 25. | |

**27**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 80. Garner could be hot tempered. Valera Depo., at 31:21-24. | |
| 81. Garner attacked Baird without provocation. Baird Decl. ¶ 26. | |
| 82. Garner got face to face with Baird. Baird did not lay a hand on Garner, Baird did not chest bump Garner.. Baird's right arm was in a sling. Garner gave Baird a two-handed shove, Baird stumbled backwards into shelving. Garner started screaming at Baird and at that point Baird shouted back at Garner, they exchanged some words. Baird then told Garner, "You just assaulted me, you're going to get fired." Baird Decl. ¶ 27. | |
| 83. Wilson from distance saw Garner close to Baird and then saw Garner shove Baird. Wilson Depo., at 20:5-22, 21:20-22:3. | |

**28**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 84. Wilson did not have reason to believe Baird had shoved Cooper or initiated physical contact with Garner. Wilson Depo., at 23:6-8, 31:6-12. | |
| 85. Wilson terminated Cooper's employment because he assaulted Baird. Wilson Depo., at 30:3-10. | |
| 86. Baird turned around and started walking to report the Garner's assault to Sim. Baird Decl. ¶ 28; Sim Depo., at 24:10-16. | |
| 87. Wilson approached them both at the time and told Garner to calm down and took Cooper elsewhere with him. Baird Decl. ¶ 28; Wilson Depo., at 22:4-10; Valera Depo., at 36:14-18. | |
| 88. Baird told Garner he was going to report the assault to Sim. Baird Decl. ¶ 28; Valera Depo., at 35:18-23. | |

**29**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 89. Baird continued working the rest of the day, finishing his regular shift.Baird worked the full day and went home. That evening, when he was at home, Baird was contacted by Leidos human resources department, who suspended him. Baird Decl. ¶ 29; Sim Depo., at 24:24-25:4 | |
| 90. Athing conducted the interviews by telephone and was never physically at location. Athing Depo., at 22:8-20. | |
| 91. About one week later, Baird had a phone conversation with Robert Athing and a woman from human resources. Baird Decl. ¶ 30. | |
| 92. Athing told Baird he was investigating. Baird cooperated and told them the truth: that he had made the Home Alone comment, that later that day Garner had assaulted him, and that he was on | |

**30**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| his way to report it to Sim when Wilson showed up. Baird Decl. ¶ 30; Athing Depo., at 28:11-29:11. | |
| 93. During the conversation, the woman asked Baird about making threats against the President and other outrageous comments. Baird Decl. ¶ 30. Baird denied making threats to the President and other outrageous comments. Baird asked her the source of the alleged comments, which was not provided to Baird. The allegation regarding shooting the President was unsubstantiated. A week later, Leidos fired Baird. Baird Decl. ¶ 30. Athing Depo., at 31:24-32:10, 33:13-18. | |
| 94. When Wilson was interviewed as part of the investigation, no one asked Wilson about Baird's political beliefs. Wilson Depo., at 27:1-15. | |

**31**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 95.   Wilson never heard Baird claim to be a racist. Wilson Depo., at 27:18-20 | |
| 96.   While Arroyoavila told Wilson that Baird was a racist, Wilson did not hear such an accusation from Garner, Valera or Angelo. Wilson Depo, at 27:21-28:2, 28:4-11. | |
| 97.   Garner did not tell Athing about political comments allegedly made by Baird. Athing Depo., at 40:12-16. | |
| 98.   While Black Lives Matter was discussed, Athing doesn't recall the specifics or context. Athing Depo., at 48:21-49:21. | |
| 99.   Athing took notes during his interviews and then destroyed them eight months later. Athing Depo., at 49:22-50:20. | |
| 100. After the interviews were completed, Athing sent a report to the Corrective Action Review | |

**32**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| Committee, consisting of Sim, legal, workplace relations, and human resources. Athing Depo., at 53:19-54:1. | |
| 101. The decision to terminate was made collectively by the Committee, including a regional director. Athing Depo., at 53:10-54:1. | |
| 102. The Committee elected to terminate Baird. Athing Depo., at 68:18-69:6. | |
| 103. Athing contends co-workers found Baird annoying because he did not share their political views. Athing Depo., at 72:20-73:2 | |
| 104. Athing doesn't recall the timing of the alleged conversation with Arroyoavila that occurred prior to Garner's assault of Baird. Athing Depo., at 83:19-84:6. | |
| 105. Arroyoavila did not see the incident. Athing Depo., at 84:7-10. | |

**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
| --- | --- |
| 106. Arroyoavila did not get in trouble for telling Baird to go back to Canada. Athing Depo., at 84:15-25 | |
| 107. Athing does not know whether Baird's comments about the "upcoming civil war" were not substantiated. Athing Depo., at 86:3-9. | |
| 108. Wilson never told Athing they were bumping chests, only that they were very close to each other. Athing Depo., at 87:10:22. | |
| 109. Sim acknowledged he himself had not heard Baird make racial comments, comments about civil wars, capital riots or shooting a president. Athing Depo., at 88:8-89:7. | |
| 110. Valera learned of the investigation from Arroyoavila and Angelo. However, no one spoke to Valera.. Valera could see Arroyoavila would be biased against Baird. | |

**34**
OPPOSITION SEPARATE STATEMENT

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| Valera Depo., at 41:11-13, 39:7-24. | |
| 111. Valera did not find Baird's political beliefs offensive. Valera Depo., at 54:4-6 | |
| 112. Valera did not observe Baird threaten violence to anyone over political beliefs. Valera Depo., at 54:7-11, 54:17-19. | |
| 113. Valera did not hear Braid threaten to shoot the president. Valera Depo., at 54:20-22. | |
| 114. Valera never got the impression Baird spent too much time discussing politics. Valera Depo., at 58:10-13 | |
| 115. Valera believes Garner should have been fired and understands why Garner sued given that he was the victim in the incident. Valera Depo., at 66:1-8, 66:12-14. | |

**35**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|
| 116. Valera doesn't think Baird should have been fired. Valera Depo., at 66:22-25. | |
| 117. Valera believes he should have been interviewed regarding Garner's assault of Baird. Valera believes its strange that Arroyoavila was interviewed when he didn't observe the incident but Valera wasn't when he did observe it. Veneracion aslo was interviewed despite not observing the incident. Valera Depo., at 67:5-8, 14-25, 68:1-5. | |

ROMERO LAW, APC

DATED: April 13, 2023

_____

**Alan Romero**
**Robert S. Myong**
**Elizabeth Villarreal**
**Attorneys for Plaintiff**
**STEVEN BAIRD**

**36**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff STEVEN BAIRD ("Plaintiff") was hired by defendants LEIDOS, INC ("Defendant") on or about July 2019. Plaintiff suffered a horrific work injury on November 11, 2019. On November 25, 2019, Defendants terminated Plaintiff's employment. Plaintiff filed the present case on June 15, 2020. On June 29, 2021, Plaintiff served discovery requests to defendants LEIDOS, INC. ("Defendant"). Defendant LEIDOS, INC. ("Leidos") served discovery requests to Plaintiff for the first time on January 21, 2022. Leidos served discovery requests for the first time on May 11, 2022. On July 8, 2022, Defendant Leidos served a notice of subpoena to Employment Development Department ("EDD"). The subpoena ("Subpoena") seeks documents dating back to 2012 pertaining to benefit payments, applications, unemployment benefits, state disability benefits, applications for state disability benefits, and medical records submitted relating to state disability benefits.

### II.      THE SUBPOENA IS UNENFORCEABLE BECAUSE IT DOES NOT SEEK RELEVANT AND ADMISSIBLE EVIDENCE

"[I]nformation is relevant if it might reasonably assist a party in evaluating the case, preparing for trial, or facilitating a settlement." (*Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546.) Discovery is liberalized "in favor of disclosures unless the request is clearly improper by virtue of well-established causes for denial." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 541.) Where a nonparty is involved, discovery must not be unduly burdensome nor merely a fishing expedition. (*Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 225.)

Although relevance is typically construed liberally (*see Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 169), the standard is more stringent when a party is attempting to discover documents which are constitutionally protected by the right to privacy. (*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1854-1855.) "[E]ven when discovery of private information is found directly relevant to the issues of

**37**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

ongoing litigation, it will not automatically allow […]. [I]f an intrusion on the right of privacy is deemed necessary under the circumstances of a particular case, any such intrusion should be the minimum intrusion necessary to achieve its objective […] [meaning] the least intrusive means to satisfy the interest. Mere convenience of means or cost will not satisfy that test for that would make expediency and not the compelling interest the overriding value." (*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1854-1855.) "The proponent of discovery of constitutionally protected material has the burden of making a threshold showing that the evidence sought is 'directly relevant' to the claim or defense." (*Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 665; *Davis v. Superior Court* (1992) 7 Cal.App.4th 1008, 1017.)

Defendant AKH in the present matter served the Subpoena to EDD seeking a fishing expedition of Plaintiff's records predating his time of employment with Defendants by several years. Not only does Defendant AKH seek documents which are not relevant to the present matter as the only relevant time period would be from the time of employment to present day, but Defendant AKH seeks documents which are protected by a right of privacy. In particular, Defendant AKH seeks EDD documents which are absolutely privileged pursuant to key sections within the Unemployment Insurance Code.

## A.     EDD Records Are Privileged

There are three key sections of the Unemployment Insurance Code which makes all EDD records and documents pertaining to unemployment and disability claims absolutely privileged. First, Unemployment Insurance Code section 1094(a) provides "information obtained in the administration of this code is confidential, not open to the public, and shall be for the exclusive use and information of the director in discharge of his or her duties." Unemployment Insurance Code section 1094(b) further provides that "any information released to authorized entities pursuant to other provisions of the code *shall not be admissible in evidence* in any action or special proceeding, other than one arising out of the provisions of this code or one described in Section 1095." (emphasis

added). Second, Unemployment Insurance Code section 2111 provides that "information obtained in the course of administration of this division is confidential and shall not be published or open to public inspection in any manner." Finally, Unemployment Insurance Code section 2714 provides that all medical records obtained "shall be confidential and shall not be published or be open to public inspection in any matter revealing the identity of the claimant or family member, or the nature or cause of his or her disability. Medical records that are disclosed shall be disclosed only pursuant to Section 1095, and shall remain confidential." The Court in *Crest Catering* strongly concluded that "[t]hese provisions manifest a clear legislative purpose to preserve the confidentiality of information submitted to the Department of Employment. (*Crest Catering Co. v. Superior Court of Los Angeles County* (1965) 62 Cal.2d 274, 276-77.)

These three sections provide ample authority that EDD records and documents are not discoverable. There are no exceptions which allows for the use of these documents or information in subsequent civil cases such as personal injury or employment/wrongful termination related actions as Defendant AKH is attempting to do in the present matter. Additionally, pursuant to Code of Federal Regulations Part 603 of Title 20,  states are required under federal law to maintain the confidentiality of unemployment compensation information and to bar the disclosure of such information. Even if Defendant AKH could muster some minuscule reason to overcome the relevancy issue, EDD would still be barred from being able to disclose such information to Defendant AKH on the basis of privilege. "[E]ven highly relevant, nonprivileged information may be shielded from discovery if its disclosure would impair a person's inalienable right to privacy. (*Britt v. Superior Court* (1978) 20 Cal.3d 844, 855-56.) As such, Defendant AKH's Subpoena for production of EDD documents and records needs to be quashed.

///

**39**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

## B.   **Defendant AKH Fails To Demonstrate How Any Of The Requested Documents Are Relevant**

"[T]he California Constitution recognizes a number of inalienable rights, including the right to privacy." (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1198-99.) "It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life, including his or her financial affairs, political affiliations, medical history, sexual relationships, and confidential personnel information." (*Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1003-04.) This right "protects an individual's reasonable expectation of privacy against a serious invasion." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 171.)

Aside from Defendant seeking documents which are privileged, Defendant seeks documents which are not relevant and invades Plaintiff's right to privacy. The documents sought have absolutely no basis in the present matter. Even if Defendant were to contend that the information is relevant for contesting Plaintiff's damages, unemployment benefits are considered a collateral source and may not be deducted from damages. "Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer." (*Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 349.) Accordingly, Plaintiff's motion to quash should be granted.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion to quash Defendant Leidos, Inc Subpoena to EDD.

///

**40**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS

**DATED:  April 13, 2023**                    **ROMERO LAW, APC**

                                   **By:** _____

                                   **Alan Romero**
                                   **Robert S. Myong**
                                   **Elizabeth Villarreal**
                                   **Attorneys for Plaintiff**
                                   **STEVEN BAIRD**

**41**
**OPPOSITION SEPARATE STATEMENT**

Case No.: 3:22-cv-00060-LL-BGS