UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BAIRD,<br><br>                          Plaintiff,<br><br>v.<br><br>LEIDOS, INC.,<br><br>                         Defendant. | Case No.:  22cv0060-LL-BGS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 46]** |

Before the Court is Defendant Leidos, Inc.'s ("Defendant" or "Leidos") Motion for Summary Judgment. ECF No. 46. Defendant's Motion for Summary Judgment has been fully briefed, and the Court deems it suitable for submission without oral argument. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

**I.  BACKGROUND**

    **A.  Factual Disputes**

The Court has taken the relevant facts from the parties' declarations, exhibits, and from each of the parties' respective Rule 56.1 statements of facts. ECF No. 46-2, Defendant's Separate Statement of Undisputed Material Facts ("DSSUF"); ECF No. 47-2, Plaintiff's Separate Statement of Disputed and Additional Material Facts ("PSSUF"). Based on the parties' statements of facts, the Court references Plaintiff Steven Baird's

("Plaintiff" or "Baird") version of the facts when noting a genuine factual dispute. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (where genuine disputes exist, the courts "view the evidence in the light most favorable to the opposing party."). The Court also notes where facts are disputed by the non-moving party.

### B.  Factual Background[1]

#### 1.  Plaintiff's Employment with Leidos

On November 26, 2018, Plaintiff began working for Leidos in Vista, California as a machinist/mechanical technician. DSSUF ¶ 1. Leidos builds prototypes for its government customers, and Plaintiff would machine prototype parts based on directions he received from Leidos' engineering department. *Id.* ¶ 2. Plaintiff was qualified and authorized to use the machines in the Leidos Machine Shop and understood the contents of the Leidos Safety Manual. *Id.* ¶¶ 7–12.

During Plaintiff's employment with Leidos, Plaintiff submitted three complaints to Leidos. *Id.* ¶ 5. The first complaint involved Leidos' mill machines. *Id.* The Leidos Safety Manual required all running machines to be attended. *Id.* ¶¶ 8–12. However, on or around September 3, 2020, Plaintiff's supervisor, John Sim ("Sim"), noticed that Plaintiff left a mill machine running while unattended. *Id.* ¶¶ 3, 14. Sim waited at the mill machine until Plaintiff returned and counseled Plaintiff on Leidos' policy to never leave a running machine unattended. *Id.* ¶ 15. Plaintiff stated that he should be allowed to walk away from a running machine and not be forced to stay by it. *Id.* ¶ 5.

Sometime around 2020, Plaintiff submitted a complaint to Sim that Leidos was purchasing pieces of metal that were too big and heavy, which required the metal pieces to be cut to size. *Id.* ¶ 5; ECF No. 46, Ex. 1, Deposition of Steven Baird Volume I ("Baird Depo. Vol. I") 121:4-124:5. Additionally, sometime on or around June 2020, Plaintiff

---

[1] As an initial note, only the facts relevant to the analysis of this Motion are discussed. The DSSUF and PSSUF greatly detail the events of the incident, but many of the facts are not relevant to this Motion.

submitted another complaint to Sim that there was a rat infestation in a Leidos company vehicle. DSSUF ¶ 5; ECF No. 46, Ex. 2, Deposition of Steven Baird Volume II ("Baird Depo. Vol. II") 137:14-144:23.

### 2. Plaintiff's Medical Leave and Accommodations

On or around January 18, 2021, Plaintiff injured his arm in a motorcycle accident. DSSUF ¶ 22. Plaintiff requested and was approved for all medical leave from January 19, 2021 through February 22, 2021. *Id.* ¶¶ 23, 25. Plaintiff also underwent heart surgery during his medical leave. *Id.* ¶ 23; PSSUF ¶ 72.

On February 22, 2021, Plaintiff returned to work a day early from his requested medical leave. DSSUF ¶ 24. Plaintiff states that he returned to work with his right arm in a sling. PSSUF ¶ 72. Upon returning to work, Plaintiff submitted and was approved for work restrictions. DSSUF ¶ 26. Plaintiff's work restrictions limited him from lifting anything above his right shoulder and "lifting/carrying/pushing/pulling more than 0 pounds." *Id.* ¶ 27; PSSUF ¶ 73; ECF No. 46, Ex. 20. Plaintiff testified that Leidos never denied any of his requested accommodations and that if he was unable to perform a movement required by his job duties, he would ask someone in the warehouse for assistance and wait until assistance was provided. DSSUF ¶¶ 28–31.

### 3. Defendant's Version of the Events on March 10, 2021

The parties disagree about what happened on or around March 10, 2021. According to Defendant, Plaintiff left his work area and entered the work areas of his co-workers, Ian Arroyoavila ("Arroyoavila") and Cooper Garner ("Garner"), to obtain materials. *Id.* ¶ 32. Plaintiff first got into a verbal dispute with Arroyoavila and approximately 10 minutes later, Plaintiff confronted Garner. *Id.* ¶ 34; ECF No. 46-5, Declaration of Robert Athing in Support of Motion for Summary Judgment ("Athing Decl.") ¶ 5; ECF No. 46, Ex. 25 at 12, 16. Plaintiff is several inches taller and approximately 100 pounds heavier than Garner. DSSUF ¶ 37. Plaintiff approached Garner, inches away from Garner's face, and the two began "chest bumping." *Id.* ¶ 35. Next, Garner states that Plaintiff cornered Garner, forcing Garner's back against shelving, and stated, "Don't be a f***ing pussy, like Ian

[Arroyoavila] is," and "We can fight if you want to." *Id.*; ECF No. 46, Ex. 26. Garner stated he felt threatened and intimidated, and he pushed Plaintiff away to create some distance. DSSUF ¶ 36. Garner's supervisor, James Wilson ("Wilson"), separated Plaintiff and Garner. *Id.* ¶ 38. Plaintiff and Garner were permitted to work the rest of the day, but Plaintiff was placed on administrative leave pending an investigation. *Id.* ¶ 39; ECF No. 46, Ex. 24.

### 4. Plaintiff's Version of the Events on March 10, 2021

Plaintiff recites a different version of the events that occurred on or around March 10, 2021. *See* PSSUF. First, Plaintiff states that there were no heated disputes and Arroyoavila was never present during the incident. *Id.* ¶¶ 32, 34. Next, Plaintiff states that when he walked through Garner's workstation, Garner was the one who got face to face with Plaintiff and attacked Plaintiff without provocation. *Id.* ¶¶ 79–81. According to Plaintiff, Garner could be hot-tempered, and Garner was the one who threated and engaged Plaintiff. *Id.* ¶¶ 35–36, 80. Plaintiff states that Garner shoved Plaintiff with his two hands, and Plaintiff stumbled backwards into shelving. *Id.* ¶ 82. Garner then started screaming at Plaintiff and Plaintiff shouted back, "You just assaulted me, you're going to get fired." *Id.* Additionally, Plaintiff notes that his right arm was in a sling at the time of the incident and denies ever chest bumping or laying a hand on Garner. *Id.* ¶¶ 35–36, 82. Wilson testified that he saw Plaintiff being pushed before he separated Plaintiff and Garner. *Id.* ¶¶ 83–84; ECF No. 47-1 at 42–63, Deposition of James Wilson ("Wilson Depo.") 20:5-22:3.

### 5. Investigation by Leidos

An investigation was conducted by Robert Athing, an "Investigator – Corporate Security," who investigated the altercation between Plaintiff and Garner for workplace violence, and by Katie Reis, Leidos' Senior Workplace Relations Manager, who investigated the workplace relations between Plaintiff and other Leidos employees. DSSUF ¶ 41. Multiple interviews were conducted from March 15, 2021 to March 16, 2021, which supported Leidos' finding that Plaintiff instigated the physical altercation. *Id.* ¶ 42; ECF No. 46, Exs. 25, 26, 30; ECF No. 46, Ex. 6, Deposition of Aaron Valera ("Valera

Depo.") 46:4-47:18. Plaintiff states that Defendant's investigation did not substantiate that Plaintiff instigated the altercation. PSSUF ¶ 42.

In addition, during Leidos' investigation, several individuals stated that Plaintiff routinely bullied and antagonized co-workers, made racist and inflammatory statements to employees, and generally made other co-workers uncomfortable. DSSUF ¶¶ 43, 44–47; Athing Decl. ¶ 6; ECF No. 46-7, Declaration of John Sim in Support of Motion for Summary Judgment ("Sim Decl.") ¶ 15; ECF No. 46-9, Declaration of Katie Reis in Support of Motion for Summary Judgment ("Reis Decl.") ¶¶ 5, 9; ECF No. 46, Ex. 4, Deposition of John Sim ("Sim Depo.") 21:16-24:9, 32:5-33:1, 41:2-21; ECF No. 46, Exs. 26, 27, 28, 29, 30, 31. Plaintiff states that these statements were unsubstantiated, and he never made these racist and inflammatory statements. PSSUF ¶¶ 43, 44, 46, 47, 93; ECF No. 47-1 at 95–123, Deposition of Athing ("Athing Depo.") 86:3-9, 88:8-89:7.

After Leidos' investigation was completed, Athing sent a report to the Corrective Action Review Committee ("Committee"). PSSUF ¶ 100. The Committee, which consisted of Sim, legal, workplace relations, human resources, and a regional director, collectively decided to terminate Plaintiff for "Misconduct: Workplace Violence." *Id.* ¶¶ 100–02; DSSUF ¶ 49. According to Leidos, Plaintiff's comments and actions were in violation of the Leidos Policy LPHR-6: Workplace Environment and Leidos Policy LP-LG-1: Standards of Business Ethics and Conduct. DSSUF ¶ 49. Leidos' Code of Conduct defines "workplace violence" as "assault, battery, violent acts or threats, including verbal or written threats and/or utterances (e.g., email), which occur in or are related to the workplace which may involve a risk of physical or emotional harm to individuals, or damage to company, contractor, or customer resources or capabilities, etc." *Id.* ¶ 50.

On March 26, 2021, Leidos terminated Plaintiff's employment. *Id.* ¶ 49. Plaintiff states that he was wrongfully terminated in retaliation for taking medical leave and requesting accommodations. PSSUF ¶ 49. In addition, Leidos removed Garner from performing on Leidos' contracts. DSSUF ¶ 40.

/ / /

### C. Procedural Background

On December 1, 2021, Plaintiff filed a First Amended Complaint ("FAC") in the San Diego County Superior Court against Defendant. ECF No. 1-2, Ex. A at 12–33, First Amended Complaint ("FAC").[2] In the FAC, Plaintiff alleges seven separate causes of action against Defendant for: (1) retaliation in violation of California Labor Code § 6310; (2) failure to provide reasonable accommodation in violation of the Fair Employment & Housing Act (FEHA); (3) failure to engage in an interactive process in violation of the FEHA; (4) retaliation in violation of the FEHA; (5) failure to prevent discrimination or retaliation; (6) violation of the California Family Rights Act (CFRA); and (7) wrongful discharge in violation of public policy. *Id.* ¶¶ 25–83. On January 14, 2022, Defendant removed the action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1 at 2.

On March 23, 2023, Defendant filed a Motion for Summary Judgment. ECF No. 46. On April 13, 2023, Plaintiff filed his Opposition ("Opposition" or "Oppo.") to Defendant's Motion for Summary Judgment. ECF No. 47. On April 20, 2023, Defendant filed its Reply ("Reply") in support of its Motion for Summary Judgment. ECF No. 49.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit

---

[2] Plaintiff filed a discrimination complaint with the California Department of Fair Employment and Housing (DFEH) with an immediate right to sue notice. ECF No. 1-2 at 29.

under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1).

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50. Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247–48; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.")).

### III. DISCUSSION

Defendant moves for summary judgment as to all causes of action in Plaintiff's FAC. *See* ECF No. 46-1, Motion for Summary Judgment ("Motion" or "Mot."). As a threshold matter, several portions of Plaintiff's FAC can be dismissed because Plaintiff does not oppose Defendant's Motion as to the first, second, third, and fifth causes of action. *See*

Oppo. at 16. Accordingly, summary judgment is granted with respect to the first, second, third, and fifth causes of action.

As to the remaining causes of action, Defendant contends that Plaintiff's fourth, sixth, and seventh causes of action for retaliation and wrongful discharge fail because the undisputed material facts show that Plaintiff cannot establish a prima facie case, and Defendant had a legitimate, non-retaliatory reason for terminating Plaintiff. *See* Mot. at 9. Defendant asserts that Plaintiff's sixth cause of action for violation of the CFRA also fails because Plaintiff testified that he received all the accommodations and medical leave he requested. *See id.* Lastly, Defendant seeks summary judgment on Plaintiff's request for punitive damages because Plaintiff cannot show by clear and convincing evidence that Defendant acted with oppression, fraud, or malice toward him and that any individual actor was shown to be an officer, director, or managing agent of Leidos. *See id.* at 29–31. The Court analyzes each of the challenges to Plaintiff's claims in turn before addressing punitive damages.

### A.   FEHA Retaliation Claim

FEHA prohibits discrimination or retaliation based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decisionmaking, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person." Cal. Gov't Code § 12940(a). It is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h).

In analyzing retaliation claims under FEHA, courts apply the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1096 (S.D. Cal. 2020) (applying the *McDonnell Douglas* burden-shifting analysis to a FEHA retaliation claim). First, the plaintiff has the "initial burden of establishing a prima

facie case of discrimination [or retaliation]." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)); *Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652, 665 (Ct. App. 2000). Second, the burden shifts to the defendant to show there was a "legitimate, nondiscriminatory [or nonretaliatory] reason for the adverse employment action." *Morgan*, 105 Cal. Rptr. 2d at 665. Third, if the defendant produces a legitimate reason for the adverse employment action, the presumption of retaliation "drops out of the picture," and the burden shifts back to the plaintiff to prove intentional retaliation. *Id*. The plaintiff can satisfy its burden by "producing substantial responsive evidence that the employer's showing was untrue or pretextual." *Lucent Techs.*, 642 F.3d at 746 (quoting *Hanson v. Lucky Stores, Inc.*, 87 Cal. Rptr. 2d 487, 493 (Ct. App. 1999)).

To establish a prima facie case of FEHA retaliation, a plaintiff must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) a causal link existed between the protected activity and the adverse employment decision. *See Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005).

### 1. Prima Face Case of Retaliation

#### a. Protected Activity

"[P]rotected conduct can take many forms." *Id.* Specifically, Section 12940(h) makes it an unlawful employment practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h); *see also Van Osten v. Home Depot, U.S.A., Inc.*, 2021 WL 3913483, at *8 (S.D. Cal. Aug. 27, 2021) ("In other words, for the activity to be protected, the employee's complaint must relate to an employment practice that FEHA prohibits.").

Plaintiff alleges that taking medical leave under the CFRA and his requests for accommodations were protected activities. *See* Oppo. at 17; FAC ¶ 54. Although the CFRA is a part of FEHA, taking medical leave under the CFRA is not a protected activity under

FEHA. *See Faust v. California Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 736 (Ct. App. 2007) ("requesting a medical leave of absence . . . is not protected under § 12940" for a FEHA retaliation claim). "Presumably, this is because a plaintiff who alleges that he or she suffered retaliation as a result of taking CFRA leave can assert a retaliation claim under the CFRA." *Kadiyan v. Medtronic*, 2011 WL 13142145, at *17 (C.D. Cal. Apr. 8, 2011). In addition, "a mere request—or even repeated requests—for an accommodation, without more, does not constitute a protected activity sufficient to support a claim for retaliation in violation of FEHA." *Ruiz v. RSCR California, Inc.*, --- F. Supp. 3d ----, 2023 WL 5088972, at *13 (C.D. Cal. July 24, 2023) (quoting *Quesada v. Albertson's LLC*, 2022 WL 2176512, at *14 (C.D. Cal. Feb. 1, 2022)); *see also Castorela v. James R. Glidewell, Dental Ceramics, Inc.*, 2016 WL 11760590, at *8 (C.D. Cal. Jan. 25, 2016) (collecting cases concluding that "a plaintiff who is denied CFRA/FMLA leave or analogous accommodations—even if that denial leads to the employee's termination—has not engaged in 'protected activity' under the meaning of § 12940(h)"). Given multiple courts' interpretation of Section 12940(h), and the fact that Plaintiff has asserted a separate CFRA claim, Plaintiff cannot allege he engaged in protected activity merely by taking medical leave under the CFRA or requesting accommodations.

Defendant argues that Plaintiff's FEHA retaliation claim also fails because Plaintiff's complaints are not qualifying protected activities. *See* Mot. at 21–22. Plaintiff testified that he submitted three complaints to Sim about Leidos that: (1) Plaintiff should be able to leave a milling machine unattended; (2) Leidos was purchasing pieces of metal that were too big and heavy; and (3) there was a rat infestation in a Leidos company vehicle. *See* DSSUF ¶ 5. Yet, Plaintiff's complaints are not protected activities under FEHA. *See Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1177 (C.D. Cal. 2013) (finding that a plaintiff's complaints to her supervisors regarding unprofessional treatment were not protected activities under FEHA because the complaints were not related to unlawful employment practices or discriminatory treatment); *Kumar v. Alameda Cty. Med. Ctr.*, 2011 WL 13244636, at *13 (N.D. Cal. Mar. 25, 2011) (finding that the plaintiff's

complaints about "unsafe or unsanitary working conditions" do not constitute protected activity under FEHA). Moreover, apart from the specific categories enumerated by the statute, "FEHA does not cover other types of retaliation claims." *Bolt v. Unum Grp.*, 2010 WL 11602054, at *3 (C.D. Cal. Oct. 7, 2010); Cal. Gov't Code §§ 12940(a), (h). Plaintiff fails to show that he engaged in a protected activity and therefore, Plaintiff cannot establish the first element of his FEHA retaliation claim.

### b.     Adverse Employment Action and Causal Connection

Next, the parties do not dispute the second element that Plaintiff suffered an adverse employment action. As to the third element, Plaintiff alleges that Defendant unlawfully terminated him because he requested medical leave and accommodations. *See* FAC ¶ 55.

Plaintiff argues there is temporal proximity between his termination and his requests for medical leave and accommodations. *See* Oppo. at 18–19. "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citing *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)). Nevertheless, temporal proximity may be undermined or negated if there are intervening events that gave rise to an adverse employment action. *See Fazeli v. Bank of America, NA*, 525 Fed. App'x 570, 571 (9th Cir. 2013) ("While the time between [plaintiff's] protected act and his termination was less than three months, the surrounding circumstances do not suggest a causal link between [plaintiff's]" filing of a complaint and his termination); *Zsenyuk v. City of Carson*, 99 Fed. App'x 794, 797 (9th Cir. 2004) (holding that intervening incidents that occurred just before a plaintiff's termination undermine plaintiff's temporal proximity argument); *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1026 (N.D. Cal. 2010) ("This intervening event negates any inference that Plaintiff's complaint caused the subsequent adverse action.").

Here, Plaintiff's termination occurred about one month after had he returned to work from medical leave and requested work accommodations. Plaintiff went on medical leave from January 19, 2021 to February 21, 2021. DSSUF ¶ 23–24. Upon returning to work,

Plaintiff submitted and was approved for work restrictions. *Id.* ¶ 26. The physical altercation with Plaintiff and Garner occurred on March 10, 2021, and shortly thereafter, Plaintiff was placed on administrative leave. *Id.* ¶¶ 32, 39. Subsequently, Leidos conducted a full investigation and the incident and obtained evidence from multiple interviews and statements that Plaintiff had violated Leidos' policies. *Id.* ¶¶ 41–50. Due to the findings from the investigation, Plaintiff was terminated on March 26, 2021. *Id.* ¶ 49.

Despite the fact that Plaintiff was terminated only about a month after he took leave and requested accommodations, the surrounding circumstances undermine Plaintiff's temporal proximity argument. *See Fazeli*, 525 Fed. App'x at 571; *Zsenyuk*, 99 Fed. App'x at 797. Plaintiff cannot establish a causal connection between his termination and his requests for leave and work accommodations because of the supervening fact of the March 10, 2021 incident with Garner and Leidos' subsequent investigation. Accordingly, Plaintiff has not established a prima facie case of FEHA retaliation.

### 2. Legitimate, Non-Discriminatory Reason

Additionally, and alternatively, even if Plaintiff could establish a prima facie case of FEHA retaliation, Defendant has provided a legitimate and non-discriminatory reason for Plaintiff's termination.

To satisfy its burden on this issue, "[t]he employer need only articulate, not prove a legitimate, non-discriminatory reason for deciding to terminate the plaintiff." *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1011 (E.D. Cal. 2011); *Univ. of S. California v. Superior Court*, 272 Cal. Rptr. 264, 268 (Ct. App. 1990) ("The responsibility of the defendant is to 'clearly set forth, through the introduction of admissible evidence, the reason for the plaintiff's rejection.'"). Moreover, "[i]n judging whether [an employer's] proffered justifications were 'false,' it is not important whether they were objectively false." *Villiarimo*, 281 F.3d at 1062 (emphasis removed) "Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (internal quotation marks omitted); *see also Joaquin v. City of Los Angeles*, 136 Cal. Rptr. 3d 472, 484 (Ct. App. 2012) ("If the employer takes an adverse

action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity," and "the relevant inquiry is whether the employer believed the employee was guilty of the conduct justifying discharge.") (emphasis and internal quotation marks omitted).

Here, Defendant decided to terminate Plaintiff because Plaintiff's actions and statements violated Leidos' workplace policies and standards. *See* DSSUF ¶ 49. Courts have held that violating workplace policies and standards is a legitimate non-discriminatory reason for termination. *See Day*, 930 F. Supp. 2d at 1170 (collecting cases in which several courts held that a violation of company policies is a legitimate, non-discriminatory reason for termination). Plaintiff's reliance upon the fact that he had satisfactory performance evaluations prior to the incident is irrelevant. *See* Oppo. at 19. In analyzing whether an employer has met its burden of articulating a legitimate, non-discriminatory reason for terminating an employee, "[i]t is immaterial that at some point in the past Plaintiff was satisfactorily performing his job duties." *See Holtzclaw*, 795 F. Supp. 2d at 1013.

Plaintiff denies making outrageous and inflammatory comments and contends that his declaration "provide[s] substantial evidence of [the] falsity of [Defendant's] nondiscriminatory reason." Oppo. at 19. Generally, non-moving parties may not rely on self-serving and uncorroborated declarations, but declarations may be sufficient to establish genuine disputes of material fact when they are based on personal knowledge, legally relevant, and internally consistent. *See Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015). Here, Plaintiff's declaration is based on his personal knowledge. ECF No. 47-1 at 4–9, Declaration of Steven Baird in Support of Opposition to Motion for Summary Judgment ("Baird Decl.") ¶ 1. However, many parts of Plaintiff's testimony and depositions are contradicted by the record. Specifically, it is undisputed that Leidos terminated Plaintiff for his reported actions and comments towards his co-workers, including Garner. *See* DSSUF ¶¶ 45, 49; PSSUF ¶¶ 45, 49. Defendant has provided substantial evidence that Leidos was made aware of Plaintiff's actions and comments

during its investigation and interviews with other Leidos employees. *See* DSSUF ¶¶ 41–49; ECF No. 46, Exs. 25–31 (statements and comments made by Plaintiff that were collected during Leidos' investigation). Defendant also offers evidence that Plaintiff had received verbal and written warnings during his employment for "inappropriate and unprofessional outbursts in the office place" and that Plaintiff left the mill machine unattended, in direct violation of Leidos' policies. DSSUF ¶¶ 3, 14–15; Sim Depo. 32:12-35:12. As such, Plaintiff's self-serving and uncorroborated declaration is not sufficient to establish a genuine dispute of material fact.

Further, although Plaintiff contends that Wilson, Sim, and Valera all testified that they did not hear racist and bullying comments from Plaintiff, the relevant inquiry here is whether Defendant believed that Plaintiff was guilty of the conduct justifying his termination. *See Joaquin*, 136 Cal. Rptr. 3d at 484. According to Defendant, Leidos honestly believed its reason for terminating Plaintiff because the investigation found that Plaintiff "was a bully and the aggressor in the interaction he had with Cooper Garner" and that Plaintiff "made numerous threatening and inflammatory comments to his co-workers." Athing. Decl. ¶¶ 5, 6; *see also* Sim Decl. ¶ 15 ("Through the investigation it became clear that Plaintiff had a pattern of making other employees uncomfortable."); Reis Decl. ¶ 9 ("After I completed my investigation I determined that Baird was a bully and engaged in numerous instances of inappropriate behavior.").

Accordingly, even assuming arguendo that Plaintiff had established a prima facie case of FEHA retaliation, Defendant has met its burden of production of articulating a legitimate, non-discriminatory reason for Plaintiff's termination.

### 3. Evidence of Pretext

Further, Plaintiff offers no evidence to prove that Defendant's explanation was untrue or merely pretext. A plaintiff may demonstrate pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of*

*California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)). When evidence of pretext is circumstantial, the plaintiff must produce specific and substantial facts to create a triable issue of pretext. *Godwin*, 150 F.3d at 1222. "An employee in this situation can not simply show the employer's decision was wrong, mistaken, or unwise." *Lucent Techns.*, 642 F.3d at 746 (quoting *Morgan*, 105 Cal. Rptr. 2d at 670). "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-discriminatory reasons." *Id.* (quoting *Morgan*, 105 Cal. Rptr. 2d at 670).

Plaintiff contends that Defendant's stated non-discriminatory reason for the adverse action was pretextual because Leidos' investigation into the incident was "questionable and shoddy." *See* Oppo. at 21. Even if Plaintiff could poke holes in the witness statements and evidence upon which Defendant relied in reaching its decision to terminate Plaintiff, Defendant has offered evidence that Leidos' investigation uncovered statements in which Defendant could reasonably believe that Plaintiff's conduct was unlawful, inappropriate, and in contravention of Leidos' policies. Again, whether Plaintiff did in fact violate company policy is irrelevant, so long as Defendant reasonably believed he did. See *Joaquin*, 136 Cal. Rptr. 3d at 484. Moreover, Plaintiff has failed to demonstrate any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason for terminating Plaintiff such that that a reasonable factfinder could rationally find it unworthy of credence. *See Lucent Techns.*, 642 F.3d at 746.

Plaintiff also suggests that Defendant's proffered reason for Plaintiff's termination was pretextual because other Ledios employees, such as Garner and Arroyoavila, were not subject to adverse employment actions after engaging in similar conduct. *See* Oppo. at 22. "A plaintiff may raise a triable issue of pretext through comparative evidence that the employer treated . . . similarly situated employees more favorably than the plaintiff." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011). Here, Plaintiff

provides no comparative evidence of similarly situated individuals who were treated more favorably than Plaintiff. In fact, after Leidos conducted its investigation, Defendant removed Garner from performing on Leidos' contracts. *See* DSSUF ¶ 40. With respect to Arroyoavila, Arroyoavila is not a similarly situated employee as Arroyoavila's comments and statements were unrelated to the March 10, 2021 incident. Plaintiff even repeatedly states that Arroyoavila was not present during the March 10, 2021 incident. *See* PSSUF ¶¶ 32, 34.

In a further attempt to establish pretext, Plaintiff argues that the temporal proximity between his termination and his requests for leave and accommodations is indicative of pretext. *See* Oppo. at 22. However, temporal proximity cannot by itself establish pretext. *Franco v. Pier 1 Imps., Inc.*, 372 F. App'x 803, 804 (9th Cir. 2010) ("temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate nondiscriminatory reason for the termination."). In addition, as previously mentioned, the temporal proximity of Plaintiff's termination and requests for leave and accommodations is insufficient to establish a causal connection.

Ultimately, Plaintiff cannot establish a prima facie case of FEHA retaliation and Defendants have proffered sufficient evidence to demonstrate a legitimate, non-discriminatory reason for terminating Plaintiff. Further, Plaintiff has not met his burden of demonstrating pretext. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's fourth cause of action for FEHA retaliation.

**B.     CFRA Retaliation Claim**

The California Family Rights Act ("CFRA") is contained within FEHA and allows for eligible employees to take up to twelve weeks of unpaid leave in a twelve-month period to care for dependents or to recover from a serious health condition. Cal. Gov't Code § 12945.2(a); *Rogers v. Cty. of Los Angeles*, 130 Cal. Rptr. 3d 350, 355 (Ct. App. 2011). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves either of the following:" (1) "[i]npatient care in a hospital, hospice, or residential health care facility," or "(2) "[c]ontinuing treatment or continuing

supervision by a health care provider." Cal. Gov't Code § 12945.2(b)(13). It is unlawful for an employer to "discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [a]n individual's exercise of the right to family care and medical leave provided by" the CFRA. Cal. Gov't Code § 12945.2(k).

To establish a prime facie case of CFRA retaliation, a plaintiff must show that: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave." *Faust*, 58 Cal. Rptr. 3d at 744 (quoting *Dudley v. Dep't of Transp.*, 108 Cal. Rptr. 2d 739, 744 (Ct. App. 2001)). Similar to the FEHA cause of action, the *McDonnell Douglas* burden shifting analysis applies to retaliation claims under the CFRA. *Chavez v. JPMorgan Chase & Co.*, 731 F. App'x 592, 595 (9th Cir. 2018) ("[Plaintiff's] CFRA retaliation claim is subject to the same burden-shifting framework as her FEHA discrimination claims"); *Moore v. Regents of Univ. of California,* 206 Cal. Rptr. 3d 841, 867–68 (Ct. App. 2016) ("Similar to causes of action under FEHA, the *McDonnell Douglas* burden shifting analysis applies to retaliation claims under CFRA.").

Here, Plaintiff brings a cause of action for CFRA retaliation, arguing that his termination was in retaliation for taking protected medical leave. *See* FAC ¶¶ 68–77. The parties do not dispute the first two elements that Defendant was an employer covered by CFRA and that Plaintiff was an employee eligible to take CFRA leave. As to the third element, Defendant states that Plaintiff failed to identify a CFRA protected activity. *See* Mot. at 29. However, there is undisputed evidence that Plaintiff informed Defendant that Plaintiff would have to take medical leave for his injured arm and for his heart surgery. *See* DSSUF ¶¶ 22–23. Defendant has presented no evidence to dispute that Plaintiff's reason for taking time off was for a qualifying CFRA purpose. *See* Cal. Gov't Code § 12945.2(b)(13). Thus, contrary to Defendant's position, the evidence establishes that Plaintiff exercised his right to take leave for a CFRA-qualifying purpose.

Next, Defendant contends that Plaintiff is unable to "show any nexus between any alleged protected activity and his termination." Mot. at 29. As mentioned in the discussion above of Plaintiff's FEHA retaliation claim, Plaintiff has not shown that there is a casual connection between Plaintiff's medical leave and his termination. As such, even drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not established a prima facie case of CFRA retaliation. Further, even if Plaintiff had established a prima facie case of retaliation and the burden were to shift to Defendant under the *McDonnell Douglas* analysis, as explained above, Defendant has offered a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff has not demonstrated pretext. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's sixth cause of action for CFRA retaliation.

### C. Wrongful Discharge of Violation of Public Policy Claim

Plaintiff's seventh cause of action is for wrongful discharge in violation of public policy. "Discharge in violation of the CFRA has been held, as a matter of law, to constitute wrongful discharge in violation of public policy." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137–38 (9th Cir. 2003) (citing *Nelson v. United Techs.*, 88 Cal. Rptr. 2d 239, 248 (Ct. App. 1999)). Thus, "[i]n California, a violation of the CFRA may form the basis of a common law wrongful discharge claim." *Ruiz*, 2023 WL 5088972, at *14.

Here, Plaintiff's CFRA and FEHA claims form the basis of his wrongful discharge claim. *See* FAC ¶ 81. Having awarded summary judgment in Defendant's favor as to Plaintiff's CFRA and FEHA claims, Plaintiff therefore cannot state a wrongful discharge claim. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's seventh cause of action for wrongful discharge of violation of public policy.

### D. Punitive Damages

To obtain punitive damages, a plaintiff must show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "The clear and convincing standard requires a finding of high probability . . . so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating

assent of every reasonable mind." *Scott v. Phoenix Schools, Inc.*, 96 Cal. Rptr. 3d 159, 170 (Ct. App. 2009) (internal quotation marks omitted). A corporate entity cannot be liable for punitive damages resulting from its employees' acts unless an officer, director or managing agent of the corporation: (1) had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others; (2) authorized or ratified the conduct giving rise to punitive damages; or (3) was personally guilty of such conduct. *See* Cal. Civ. Code § 3294(b). "Managing agents" are "those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 981 P.2d 944, 951 (Cal. 1999).

Here, Plaintiff's punitive damages claim does not survive summary judgment for three reasons. First, because the Court has granted summary judgment as to all of Plaintiff's remaining claims, Plaintiff's claim for punitive damages shall likewise be dismissed. *See Sako v. Wells Fargo Bank, N.A.*, 2015 WL 5022307, at *21 (S.D. Cal. Aug. 21, 2015) (granting summary judgment on request for punitive damages because court granted summary judgment on underlying related causes of action).

Second, even if Plaintiff's retaliation and wrongful discharge claims had survived summary judgment, Plaintiff does not point to any evidence of "oppression, fraud, or malice" by Defendant. According to Plaintiff, "Leidos painted Baird as an aggressor without basis to have him fired. Oppo. at 23. However, "an employee [that] was fired in violation of public policy does not itself justify sending a punitive-damages demand to a jury." *Larkin v. Home Depot, Inc.*, 2015 WL 1049716, at *3 (N.D. Cal. Mar. 9, 2015) (internal quotation marks and citations omitted).

Lastly, Plaintiff contends that the Committee that made the decision to terminate him, including a regional director, legal, human resources, and Baird's manager, are managing agents. *See* Oppo. at 23. However, regular employees are not officers, directors, or managing agents of the corporations, even if they have the authority to hire and fire employees. *See White*, 981 P.2d at 954. Rather, Plaintiff must show that the employees in

question have "substantial discretionary authority over significant aspects of a corporation's business." *Id.* Here, although Plaintiff claims that Leidos retaliated against him, Plaintiff has not submitted evidence that any of the employees in the Committee that made the decision to terminate Plaintiff were officers, directors or managing agents of Leidos that had the authority to influence Leidos' corporate policy. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's request for punitive damages.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety.

Dated: February 13, 2024

_____
Honorable Linda Lopez
United States District Judge